SUSAN MUZZY vs. CAHILLANE MOTORS, INC.

Hampshire. April 5, 2001. - June 27, 2001.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Instructions to jury, Failure to make objection. *Employment,* Sexual harassment. *Waiver.*

Discussion of the legal framework supporting the "reasonable person standard" jury instruction to be given by the judge in sexual harassment cases. [411-414]

In an action against an employer by a former employee, alleging that she had been subjected to a sexually hostile work environment in violation of G. L. c. 151B, § 4 (16A), the judge's "reasonable person standard" instructions to the jury adequately conveyed the elements of the claim, were straightforward and logically presented, and were not made unduly confusing by additional context contained in the instructions [414-417], and the instructions did not give rise to any prejudice, bias, or unfairness [417].

CIVIL ACTION commenced in the Superior Court Department on May 28, 1997.

A motion for partial summary judgment was heard by *Judd J. Carhart*, J., and a claim for sexual harassment was tried before *C. Brian McDonald*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol Clarke* for the plaintiff.

*Carol Booth* for the defendant.

*Jennifer L. Levi, Karen L. Loewy, & Andrea C. Kramer*, for Gay & Lesbian Advocates & Defenders & another, amici curiae, submitted a brief.

CORDY, J. Susan Muzzy brought an action against her former employer, Cahillane Motors, Inc. (Cahillane), alleging that she was wrongfully terminated and subjected to a sexually hostile work environment in violation of G. L. c. 151B, § 4 (16A). Partial summary judgment was granted for Cahillane on the wrongful termination claim, and the case proceeded to trial before a jury on the sexual harassment claim.

After an eight-day trial, the jury found in favor of Cahillane, and the judgment was appealed. We transferred the case to this court on our own motion to consider Muzzy's claim that the "reasonable person standard" jury instruction given by the trial judge on the sexual harassment claim was erroneous, prejudicial, and confusing.

Specifically, Muzzy, a lesbian, complains that the judge erred in instructing the jury to evaluate her sexual harassment claim from the view of an "objectively reasonable woman of lesbian orientation," and that this error caused such prejudice and confusion among the jurors that a new trial is required. While we find that the plaintiff, having agreed to the language now challenged, waived the principal objections to the instruction that she now raises on appeal, we take this occasion to provide further guidance on instructions in sexual harassment cases.[1]

*Factual background.* In brief, the facts adduced at trial are these. In August, 1995, Muzzy went to work in Cahillane's sales, finance, and insurance department. The manager of the department was Deborah Cahillane. Both the plaintiff and the manager were lesbians. Shortly after her employment began, Muzzy claimed that she became the target of a constant barrage of verbal and physical conduct of a sexual nature perpetrated by her manager, which included inappropriate physical touching, degrading sexual conversation and comments, and unwelcome invitations and advances imbued with sexual overtones. According to Muzzy's testimony, this conduct took place both during and after the working day. Eventually, after thirteen months, she felt she could no longer work at the dealership and did not return.

In contrast to the plaintiff's testimony, Deborah Cahillane testified that she and Muzzy had a brief romance outside of the workplace, and to the extent there was physical contact or verbal communication between them it was by mutual consent, never complained of, and not sexual harassment.

In the course of the trial, it was clearly and explicitly presented to the jury that both Muzzy and the manager about

---

[1]We acknowledge the brief filed jointly by the Gay and Lesbian Advocates and Defenders and the Women's Bar Association of Massachusetts as amici curiae.

whom she was complaining were lesbians. Indeed, prior to trial the parties had alerted the court to this feature of the case and requested a voir dire of prospective jurors to screen out those who might harbor prejudices that would affect their ability to decide fairly a case involving such issues. Apparently, during the empanelling the judge questioned each juror individually regarding his or her attitudes and prejudices concerning homosexuals and lesbians and both parties were content with the jury as selected.

*Legal framework — sexual harassment.* General Laws c. 151B, § 4 (16A), makes it unlawful "[f]or any employer, personally or through its agents, to sexually harass any employee." The term "sexual harassment" is defined in G. L. c. 151B, § 1 (18), as:

> "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (*a*) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (*b*) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment."

We have held that this definition encompasses a claim for sexual harassment brought by an individual claiming harassment by a member of the same gender. See *Melnychenko* v. *84 Lumber Co.,* 424 Mass. 285, 290 (1997).

To establish her claim based on work environment (§ 1 [18] [*b*]), the plaintiff was required to demonstrate that she worked in a sexually hostile environment that unreasonably interfered with her work performance. To sustain that burden, she needed to establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance. This "objective" reasonable person standard has been interpreted to mean that the evidence of sexual harassment

is to be considered from the "view of a reasonable person in the plaintiff's position." *Ramsdell* v. *Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 677-678 n.3 (1993), quoting *Gnerre* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 502, 507 (1988).[2]

Similarly, the United States Supreme Court, in analyzing the reasonable person standard in a same sex hostile work environment case, has held that the standard under Federal antidiscrimination law is that of "a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998), quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court went on to explain in *Oncale* v. *Sundowner Offshore Servs., Inc., supra* at 81-82, that:

> "In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. . . . Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."

We are in accord both with the standard and the reasoning enunciated by the *Oncale* Court.

The language, "a reasonable person in the plaintiff's position, considering all the circumstances," is a sufficient and appropriate instruction for a trial judge to give on the "reasonable person" standard. If given, counsel is free to point out and argue to the jury the plaintiff's position and the relevant circumstances in the particulars of the case being tried.

It is generally understood that endowing the "reasonable

---

[2] "To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive." *Messina* v. *Araserve, Inc.*, 906 F. Supp. 34, 36 (D. Mass. 1995), citing *Ramsdell* v. *Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 678 (1993). In the present case, we are concerned only with the objective requirement of the claim. Muzzy also needed to demonstrate that the conduct in question was subjectively offensive to her, but she does not challenge the instruction on that issue.

person" with attributes of the plaintiff (in the context of a jury instruction) is a measure that is designed to work to the plaintiff's advantage and against the prospect of "ingrained notions of reasonable behavior fashioned by the offenders." *Ellison* v. *Brady*, 924 F.2d 872, 881 (9th Cir. 1991), quoting *Lipsett* v. *University of P.R.*, 864 F.2d 881, 898 (1st Cir. 1988). However, whether a trial judge in his instructions to the jury should move beyond the *Oncale* articulation of the standard to add further context, as it did in this case, is a matter of some experiment and debate.[3]

There is a balancing of benefits and risks that must be undertaken when the reasonable person instruction is given further specific context: The inclusion of some of the plaintiff's attributes may make more certain that a jury consider whether the conduct would be offensive to a reasonable person in the plaintiff's position, not just to a generic reasonable person, and may help ensure that the jury view the conduct from the plaintiff's perspective; on the other hand, providing further context of this type may perpetuate negative stereotypes or insert into the case prejudicial or inflammatory material that has

---

[3]See *Burns* v. *McGregor Elec. Indus., Inc.*, 989 F.2d 959, 962 n.3 (8th Cir. 1993) (noting that in hostile environment litigation under Title VII of the Civil Right Act of 1964 appropriate standard is that of reasonable woman in similar circumstances); *Ellison* v. *Brady*, 924 F.2d 872, 879 (9th Cir. 1991) (holding "reasonable woman" standard should apply to determine whether alleged conduct was severe or pervasive because sex-blind reasonable person standard tends to be male biased and systematically ignores experiences of women); *Messina* v. *Araserve, Inc., supra* at 37 (whether comments and gestures were pervasive enough to affect work performance of "reasonable homosexual man" is a question for the factfinder); *Harris* v. *International Paper Co.*, 765 F. Supp. 1509, 1515-1516 (D. Me.), vacated in part, 765 F. Supp. 1529 (D. Me. 1991) (in case alleging racial harassment, "reasonable black person" standard should apply in assessing unwelcomeness and pervasiveness of conduct and speech because of different social experience of white Americans and black Americans). But see *Richardson* v. *New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 n.3 (2d Cir. 1999) ("we reject the view of those courts that look to the perspective of the particular ethnic or gender group, e.g., a 'reasonable African American' or a 'reasonable Jew' "); *DeAngelis* v. *El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.), cert. denied, 516 U.S. 974 (1995) ("The test is an objective one, not a standard of offense to a 'reasonable woman' "). See also Bernstein, Treating Sexual Harassment with Respect, 111 Harv. L. Rev. 445, 467 (1997) (commenting on disagreement over meaning of reasonable person standard).

no relevance to the plaintiff's experience of harassment in the matter being tried.

If a judge chooses to refine the *Oncale* instruction by adding one or more of the attributes of the plaintiff as context, the judge should do so with the following admonitions in mind: (1) any further refinement to the standard must not reduce it to a subjective standard; (2) the judge's instruction should not include any characteristics of the plaintiff that are not relevant to the claim; and (3) the judge should give serious consideration to a plaintiff's objection to an instruction that references particulars of the plaintiff's race, gender, sex, ethnicity, or sexual orientation.[4]

*Jury instructions in the present case.* The parties agreed, prior to the charge, that the judge should instruct the jury that they were to use the standard of an objectively reasonable person in the plaintiff's position, that is a lesbian woman. At a precharge conference before the close of the trial, the judge inquired of counsel as to their views on what he ought to instruct with respect to the "reasonable person standard":

> THE JUDGE: "What are the characteristics of the objectively reasonable person? Is it a woman? Is it a lesbian woman? What is the standard?"

> COUNSEL FOR THE DEFENDANT: "I believe it is a reasonable person in the plaintiff's position which would indicate that it is a lesbian woman."

> "..."

> COUNSEL FOR THE PLAINTIFF: "I believe that's correct, Your Honor."

> THE JUDGE: "That's my reaction. I wanted to hear your comment, if you had any objection. I think it's not stepping over the line to subjective evaluation, it's an objective fact of her position. All right. I'll make sure that it is clear to the jury."

The next morning, before closing arguments, there was

---

[4]It is because the risks of such a particularized instruction harms plaintiffs, not defendants, that a plaintiff's objection should be given significant weight.

discussion prompted by the plaintiff's counsel with regard to other aspects of the judge's proposed charge. However, no objection was voiced with regard to the prior day's agreement on the reasonable person instruction. After the plaintiff's closing argument and in light of a comment the plaintiff's counsel had made, there was another conference between counsel and the judge, this time specifically regarding the "reasonable person standard." Again, no objection was voiced by the plaintiff's counsel with respect to the agreed-on language.

Thereafter, with all parties in agreement, the judge charged the jury, in pertinent part, as follows:

> "When you're determining whether or not the conduct described by [the plaintiff] was severe or pervasive in creating a hostile work environment, you must consider the conduct in the light of the objectively reasonable person in the plaintiff's position, in this instance, a woman whose sexual orientation is lesbian."

> "When I told you that you must consider whether the sexual advances or sexual conduct was unwelcome, I told you to consider the plaintiff's subjective view of the conduct. Now, when you're considering whether the conduct was severe or pervasive, you are to consider not the plaintiff's subjective view but what's called the objective view, the view of an objectively reasonable person, an objectively reasonable woman of lesbian orientation."

Following the charge, at a sidebar conference, one of the plaintiff's counsel told the judge that she had "an objection to the lesbian standard that we're using." Counsel stated that she did not feel it was an appropriate standard, that it should have been "a reasonable person standard."[5] She articulated the basis of her objection as follows: "I've looked at a couple of jurors when you read those instructions, and there was a bit of confusion as to . . . what that meant, you know, that they're supposed to decide as a reasonable person in like circumstances and that those like circumstances are as a lesbian woman." Counsel did not cite bias or the potential prejudicial effect of

[5]The plaintiff in her written requests for jury instructions had requested that the judge instruct the jury to use a "reasonable woman standard."

the instruction as a basis for her objection at the time, but now does so extensively in her brief on appeal.

In response to the plaintiff's objection, the judge stated that there had been agreement to the instruction the previous day, that he thought it was an appropriate instruction, and that he was not prepared to change it at that point. The jury then proceeded to their deliberations. No questions were asked by the jury with regard to the judge's instruction on this issue.

*Waiver.* Rule 51 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), provides, in pertinent part:

> "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The plaintiff argues that she adequately preserved her assignments of error with regard to the reasonable person instruction by objecting to it after the judge concluded his charge to the jury and before the jury retired. On appeal, she contends that the instruction was erroneous as matter of law, was prejudicial, and created confusion resulting in an unfair trial.

We disagree that she adequately preserved her objections based on prejudice and error of law. It is axiomatic that "[a] party may not state one ground when objecting to an instruction to the jury and attempt to rely on a different ground for the objection on appeal." 9A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2554 (1995). The only objection adequately preserved was the one articulated at the time of the objection, and that was the possibility of juror confusion based on counsel's observation of the jurors' faces during the charge.

We have reviewed the instructions in their entirety and find that they adequately conveyed the elements of the claim, were straightforward, logically presented, and were not made unduly confusing by the additional context contained in the reasonable person instruction.

Our view with respect to the plaintiff's waiver of her other objections is further strengthened by the conduct of the parties culminating in the judge's decision to give the instruction in

question. It is rare that a case comes before us where one party objects after the charge to the precise language to which he or she has agreed at the precharge conference. Having agreed to the instruction at that charge conference, having failed to object to it at two subsequent opportunities the next day, having waited until the arguments (which were premised on that agreed-on instruction) concluded, and having based her objection solely on counsel's general sense from viewing the jurors' faces that there might be confusion, we deem the plaintiff's present objections (that the contextualized instruction was both erroneous and prejudicial) as having been waived.

Moreover, we find the plaintiff's allegations in her brief that the instruction was "highly charged," improperly "shifted the focus onto the Plaintiff's status as a lesbian," and introduced the plaintiff's sexuality to and thereby "tainted the jury," as being without basis in the trial of this case. The record before us makes clear that this case was all about the alleged sexual interaction of two lesbian women. The jury heard several days of testimony, including extensive testimony from the plaintiff, about the fact that both she and Deborah Cahillane were lesbians, and about sexually explicit conversations between them regarding lesbian kissing, lesbian dating, and lesbian sex toys. In these circumstances, we are not persuaded that the reference to a "lesbian woman" in the judge's instruction gave rise to any prejudice, bias, or unfairness. Even if the instruction were erroneous, we cannot say that it affected the essential fairness of the trial or would have changed the outcome.

*Judgment affirmed.*