**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

Nos. 02-2383, 02-2384, 02-2465, 02-2546

ANITA J. HORNEY,

Plaintiff-Appellee\Cross-Appellant,

v.

WESTFIELD GAGE COMPANY, INC.; EDWARD WOODIS,

Defendants-Appellants\Cross-Appellees,

and

RICHARD PATTERSON

Defendant\Cross-Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, United States Magistrate Judge]

---

Before

Selya, Circuit Judge,

Stapleton,* Senior Circuit Judge,

and Baldock,** Senior Circuit Judge.

---

Thomas E. Shirley, with whom Seth R. Aframe and Laurie A. Drew were on the brief, for Defendants-Appellants\Cross-Appellees.

Richard B. Klibaner, with whom Donna M. Cuipylo was on the brief, for Plaintiff-Appellee\Cross-Appellant.

---

October 9, 2003

---

* Of the Third Circuit, sitting by designation.
** Of the Tenth Circuit, sitting by designation.

**STAPLETON**, <u>Circuit Judge</u>.

I. Overview.

A jury trial before the United States District Court for the District of Massachusetts resulted in a judgment directing Westfield Gage Co., Inc. ("Westfield") to pay $582,225 to Anita J. Horney ("Horney") in damages and attorney's fees on account of various claims under Title VII (42 U.S.C. § 2000e, et seq.), the Equal Pay Act (26 U.S.C. § 206(d)), and a Massachusetts employment discrimination statute (Mass. Gen. L. ch. 151B). A co-defendant, Edward Woodis, was ordered to pay $25,000 in damages for sexually harassing Horney. Following the jury's verdict, the district court reduced the jury's $750,000 award on the gender discrimination claim to $187,500 and denied Woodis's request that his post-verdict settlement agreement with Horney be invalidated.

Westfield and Woodis, collectively "Appellants," appeal the district court's disposition of their post-verdict motions for judgment as a matter of law or, alternatively, a new trial. Woodis also appeals the denial of his motion concerning the settlement agreement. Horney cross-appeals, requesting that we find error in the district court's decision at trial to dismiss her claims for punitive damages.

We will uphold the jury's verdict finding that Woodis and Westfield had sexually harassed Horney by subjecting her to a

-2-

hostile and abusive working environment in violation of Title VII and Mass. Gen. L. ch. 151B. We will also affirm the district court's refusal to invalidate the settlement agreement between Horney and Woodis. However, we will reverse the judgment against Westfield to the extent it is based on Horney's gender discrimination claim and will remand for a new trial on that claim. Respecting Horney's cross-appeal, we conclude that the district court erred in dismissing Horney's claims for punitive damages and will remand the matter to the district court for further proceedings on those claims consistent with this opinion.

The parties are familiar with the factual setting of this matter and with the evidence submitted at trial. Since we write only for them, we do not provide a narrative summary of that evidence. We will address in turn each of the assigned errors in the appeals and the cross-appeal and will there refer to the evidence where necessary to explain the court's disposition.

## II. The Appeals.

### 1. The liability verdict on the hostile work environment claims is not supported by the record.

In order to be successful on a hostile work environment claim under Title VII, a plaintiff must establish:

> (1) that she (or he) is a member of a protected class;
> (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex;
> (4) that the harassment was sufficiently severe or

pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)(quotations omitted).

Pursuant to Mass. Gen. L. ch. 151B § 4(16A), it is unlawful "[f]or any employer, personally or through its agents, to sexually harass any employee."  Mass. Gen. L. ch. 151B § 1(18) defines "sexual harassment" as:

sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.

To establish a claim based on this statute, a "plaintiff [is] required to demonstrate that she worked in a sexually hostile environment that unreasonably interfered with her work performance." Muzzy v. Cahillane Motors, Inc., 749 N.E.2d 691, 694 (Mass. 2001).  To sustain this burden, the plaintiff needs to "establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work

performance." Id. "'To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive.'" Id. at 695 n.2 (quoting Messina v. Araserve, Inc., 906 F. Supp. 34, 36 (D. Mass. 1995)).

Appellants attack the subjective element of the hostile work environment test. They assert that Horney was a willful participant in much of the complained of conduct and, therefore, the conduct at Westfield was not unwelcome. They also assert that the conduct was not, as a matter of law, sufficiently severe or pervasive to constitute a hostile environment.

Based on our review of the evidence at trial, and drawing all reasonable inferences in favor of the jury's verdict, we find that there is sufficient evidence to sustain the verdict against Appellants on the hostile work environment claims. In particular, we find that there is sufficient evidence for a reasonable jury to conclude that the complained of conduct was both objectively and subjectively offensive and that it was severe and pervasive.

Testimony at trial indicated that her supervisor, Woodis, regularly used such terms as "bitch" and "cunt." At trial, Horney testified that Woodis repeatedly asked her, "[w]hose desk are you under?" He had also asked her "[a]re you fucking him now?," "[y]ou blowing him?," and while she was talking to a co-worker he asked the co-worker "[w]hat, are you fucking her mother?" On another

occasion, when she remarked that she was anal retentive, he asked her "[i]s that what your mother taught you to do, lick ass?" Evidence indicated that another Westfield employee remarked to her that "[w]omen are only good at getting fucked up the ass at Westfield Gage." Horney testified that on one occasion Woodis remarked to her that "[t]hey should have never hired women in this department," and "[w]omen don't belong in the work – machine shops." The evidence further showed that lewd posters, pictures and other explicit material were common place at Westfield.

Appellants argue that, because Horney concedes that she engaged in some salacious conduct, used obscenities, and regarded some of the provocative pictures as "funny," she cannot, as a matter of law, show that the sexually explicit conduct at Westfield was subjectively offensive or unwelcome. We find this argument unpersuasive. There was ample evidence that Horney found the conduct she complained of unwelcome. She testified, repeatedly, that she felt offended and "humiliated" by the sexual comments made by her supervisor, Woodis, and other co-workers. Judy Gutt, the person charged with fielding sexual harassment complaints at Westfield testified that on several occasions Horney had complained -- usually informally -- about incidents at Westfield. Gutt testified that Horney had complained when a co-worker told her that "[w]omen were only good at getting fucked up the ass at Westfield

Gage." She testified that Horney had complained that Woodis had asked Horney whose desk she was under, and if she "was fucking [a fellow employee] now." Gutt also testified that Horney complained about the off-color comment Woodis made about her mother, and about Woodis having asked her on a regular basis who she was blowing.

Horney's expert witness, Dr. Lloyd Price, testified that Horney's participation in some of the risque conduct "represented an adaption to an environment in which the use of profanity was rife." Horney's use of profanity, he indicated, represented both an attempt to "fit in" and to adjust, e.g. survive her environment." Horney's attorney asked Dr. Price whether "knowing that . . . she would laugh at a joke that might have sexual [content], does that change your opinion at all about whether or not she would be distressed by the workplace?" Dr. Price replied that it would not.

Horney admits that during her employment at Westfield she used obscenities and participated in conduct relating to certain sexual jokes and pictures at Westfield. However, the evidence she submitted supports a finding of threatening and offensive conduct by Woodis and other co-workers which is distinguishable from the conduct in which she engaged. The jury could reasonably have distinguished between joking references to sexual material made by Horney, and her supervisor's screamed obscenities, offensive and

derogatory comments regarding whether she or her mother were engaging in sex acts with particular co-workers, and statements about women's role at Westfield. See Garcez v. Freightliner Corp., 72 P.3d 78, 86 (Ore. App. 2003) (finding that a reasonable jury could conclude that racially motivated conduct and comments directed at the plaintiff were subjectively unwelcome even though plaintiff had engaged in some similar conduct as a coping mechanism). Because a reasonable jury could have found the alleged conduct at issue to be both subjectively offensive/unwelcome and severe and pervasive, we will decline to disturb the jury's verdict regarding the sexual harassment claim.[1]

2. The jury's award of $250,000 for emotional harm was excessive.

---

[1] Appellants also argue that they are entitled to a new trial on the sexual harassment charge because the district court improperly excluded evidence. Appellants sought to introduce testimony that, in 1993, Horney lifted her shirt, exposing her breasts to the male witness while she was working at the Maple Leaf Restaurant. The district court excluded the evidence as being only mildly relevant under Federal Rule of Evidence 401 and unduly prejudicial under Federal Rule of Evidence 403. This was not an abuse of its considerable discretion under Rule 403.

Appellants also urge that the court committed reversible error by failing to instruct the jury that neither Title VII nor its Massachusetts equivalent mandate clean language. The district court fully and accurately explained to the jury what was required by Title VII and the Massachusetts statute in a sexual harassment case. It was not required to do more. See Poulin v. Greer, 18 F.3d 979, 983 n.3 (1st Cir. 1994) ("In reviewing a court's decision not to give a particular instruction, our duty is to determine whether the instructions as given tend to confuse or mislead the jury with regard to the applicable principles of law.").

"We rarely will override the jury's judgment on the appropriate amount of damages awarded. [T]he jury's otherwise supportable verdict stands unless [it is] grossly excessive or shocking to the conscience." Brown v. Freedman Baking Co., 810 F.2d 6, 11 (1st Cir. 1987) (alterations in original) (internal quotations omitted). "We will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less. . . . We will only reverse an award if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir. 1999).

Here, Horney submitted evidence from an expert psychiatrist describing Horney's symptoms of sleep disturbances, withdrawal, nausea and vomiting. He diagnosed Horney as suffering major depression resulting from harassment in the workplace. He testified that she was still significantly symptomatic three-and-one-half years after her employment ended.

This evidence is similar to other cases where courts have upheld similar jury awards. See Koster, 181 F.3d at 36 (finding that $250,000 was the maximum recovery for emotional damages in a case where the plaintiff had lost his job of 25 years and had trouble sleeping, was anxious, and his family life had suffered); Westinghouse Elec. Supply Corp. v. Mass. Comm'n Against

Discrimination, 9 Mass. L. Rep. 661 (Mass. Super. Ct. Mar. 5, 1999) (affirming an award of $250,000 for emotional distress where a plaintiff suffered exacerbated insomnia, constant diarrhea, and stomach pain (all of which were present to a lesser degree because of a physical ailment that resulted in his termination)). We decline to disturb the award of compensatory damages for Horney's emotional distress.

3. There is insufficient evidence to support a verdict against Westfield on the gender discrimination claim.

Westfield argues that Horney failed to provide sufficient evidence of actionable gender discrimination and, therefore, we must direct that judgment be entered in Westfield's favor. Alternatively, Westfield argues that it is entitled to a new trial because the district court failed to meaningfully limit what conduct the jury could consider actionable gender discrimination. Westfield asserts that the jury's general verdict of gender discrimination prevents this court from determining whether the verdict rests on a proper foundation. We first turn to the insufficiency of evidence argument.

We find that Horney presented sufficient evidence of actionable gender discrimination for a jury to reasonably find in her favor. We will, therefore, reject Westfield's demand that we direct the district court to enter judgment in Westfield's favor.

-10-

Viewing the evidence in the light most favorable to the non-moving party, a jury could have reasonably concluded that Westfield engaged in actionable gender discrimination. At the very least, Horney showed a prima facie case of gender discrimination regarding her termination from Westfield. Neither party disputes whether Horney is a member of a protected class. It is undisputed that Horney offered evidence of at least two adverse employment actions. Horney argues that she was fired, or, alternatively, that she was constructively discharged. Either action would constitute a well-established adverse employment action under Title VII. See Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 n.2 (1st Cir. 2003); Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000). Additionally, the environment at Westfield, including specific evidence relating to Woodis's gender-based treatment of Horney, shows that there was sufficient evidence for Horney to show that she was constructively discharged. Westfield does not challenge the other elements of Horney's prima facie case.

Westfield also correctly contends that its articulation of a legitimate, non-discriminatory reason for Horney's termination, i.e., insubordination, required Horney to come forward with evidence from which the jury could find pretext. While we agree, we conclude that she met this burden.

-11-

Showing that similarly situated males were treated differently is only one way in which a female plaintiff can prove pretext. Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003). Another "method is to show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." Santiago-Ramos v. Centenial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000). See Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (stating that means to show pretext and discrimination may include "but are by no means limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, [denigrating] comments by decisionmakers . . . , [and] the incidence of differential treatment in the workplace") (citations omitted). The evidence produced at trial was sufficient to permit a jury to conclude that Westfield's proffered explanation for Horney's discharge – insubordination – was pretextual and that gender discrimination motivated Horney's discharge. As Horney's immediate supervisor, Woodis was either the decisionmaker regarding the termination or one in a position to influence the decisionmaker. Evidence indicated that Woodis had stated that "[w]omen don't belong in machine shops," and that "[t]hey should never have hired women in this department." Evidence also included testimony that Woodis treated women more harshly than men and would use derogatory terms

that uniquely refer to the female gender, such as "bitch" and "cunt."

Finally, when Horney went home, evidence at trial indicated that Woodis directed Gutt to "call that drunk and drug crazed bitch and tell her to get her ass back in here." (Emphasis added.) See Thomas v. Eastman Kodak Co., 183 F.3d 38, 58 (1st Cir. 1999) (stating that a finding that the plaintiff was treated differently because of membership in a protected class can be made even if the employer "simply did so because of unthinking stereotypes or bias").

4. <u>A retrial of the gender discrimination claim is required because the verdict rendered by the jury may rest on an improper foundation.</u>

Westfield insists that some of Horney's gender discrimination claims did not involve adverse employment actions that are independently actionable under Title VII. It asserts that these non-actionable claims included, inter alia: (1) Horney's claim that Westfield failed to adequately train Horney, when such failure did not result in an adverse consequence to the employee; (2) Horney being required to work on New Year's Eve, 1997; and (3) Horney's claim that male employees were allowed to get coffee during working hours, while she was only allowed to get coffee during break-time. Westfield also argues that Horney failed to provide sufficient evidence that, as a result of gender discrimination, Horney: (1)

was denied raises; (2) did not receive adequate training; and (3) was required to work on New Years Eve, 1997. Westfield correctly points out that consistent with the court's charge the jury could have based its verdict on one or more of these six grounds.

Before us, Horney has not addressed or affirmatively contested Westfield's arguments that some of her claims were either: (1) not independently actionable under Title VII, or (2) were not adequately supported by evidence produced at trial to sustain the jury's verdict of gender discrimination.[2]

_____

[2]Horney does argue that Westfield has waived any objection to the jury instruction by not specifically requesting special findings as to each adverse employment action at trial. We do not agree. Westfield Gage's counsel argued the following at the close of evidence:

Westfield Gage's Counsel: My understanding of the law, Judge, is you can use this kind of stuff to buttress evidence, but it can't standing alone constitute discrimination and so –

The Court: Well, if somebody is denied overtime because they're a woman, that would be an adverse action that's taken, correct?

Westfield Gage's Counsel: Then how is the question framed? Do you find discrimination by reason of termination (A), do you find discrimination by reason of overtime denied (B), do you find reason of failure to support (C)?

The Court: I was intending to give instructions which make clear that it could be one action alone or –any of those actions standing alone . . .

Westfield Gage's Counsel: Note my objection, please, your Honor.

-14-

"It is settled law that, when multiple claims are submitted to a jury and only a general verdict is returned, a new trial is required if some of the claims should not have been submitted and the jury's consideration of those claims may have affected the verdict." Lattimore v. Polaroid Corp., 99 F.3d 456, 468 (1st Cir. 1996).

"Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). "Typically, the employer must either . . . take something of consequence from the employee, say, by discharging or

---

Mr. Ryan: With respect to gender discrimination, your Honor, I'd ask for a breakdown by the Court as to whether the Plaintiff has proven by a preponderance of the evidence that she was intentionally discriminated against, and then break it down, A, was it constructive discharge.

The Court: Noted and overruled.

***

Mr. Ryan: I'd ask that there be a second question asking the jury to determine whether they found discrimination by means of termination.

The Court: Overruled.

We find that Westfield's objection at the close of evidence adequately preserved its argument that the district court failed to remove from the jury's consideration certain gender discrimination claims that were insufficient as a matter of law.

-15-

demoting her, reducing her salary, or divesting her of significant responsibilities" or "withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service."  Id.

At trial, Horney complained that she was denied raises on account of her gender.  It is apparent that this claim fails as a matter of law.  Horney attempted to support this claim by stating that she was reprimanded by Woodis when she asked the company president for a raise.  Woodis was upset that Horney circumvented the line of authority in not asking him for the raise first. Plaintiff also contends that she was not offered a raise when she was promoted to inspector.  However, as Westfield points out, Plaintiff received and kept the raise offered to her by the company president despite Woodis's verbal reprimand.  Also, Horney does not allege that she asked for a raise when she was transferred to inspections, she does not identify a company policy to give a raise when moving to inspector, nor does she identify any employee who received such a raise on transfer.  We conclude that the evidence produced at trial was insufficient to support a claim that gender discrimination played a part in Horney being denied raises, or that she was even denied a raise for that matter.  See Gorski v. New Hampshire Dep't of Corrs., 290 F.3d 466, 475 (1st Cir. 2002)

-16-

(finding that plaintiff's discrimination claim that she was denied a job transfer failed as a matter of law, when there was no actual denial of a job transfer and it was undisputed that the plaintiff never actually applied for a transfer).

Horney also insisted at trial that, as a result of gender discrimination, she was denied equal pay when she was hired. This claim would seem to parallel her successful Federal Equal Pay Act claim. Horney now concedes that the jury verdict finding Westfield to have violated the Federal Equal Pay Act is not supported by the evidence. This concession would appear to be fatal to this aspect of her gender discrimination claim.

On remand, the district court should require Horney to identify the adverse employment actions she believes she is entitled to submit to the jury as independent bases for gender discrimination liability. To the extent Westfield contests the legal sufficiency of any one or more of these theories of liability or the sufficiency of the evidence supporting it, the court should resolve the dispute and confine the jury's deliberations to permissible theories of recovery.

5. **The verdict on Horney's Equal Pay Act claim is not supported by the record.**

Horney's brief concedes this point and, on remand, the district court will vacate this portion of the judgment against Westfield.

6. **The post-verdict settlement agreement between Horney and Woodis must be rescinded because Woodis entered it based upon a unilateral mistake of fact.**

Woodis asserts that he entered into the settlement agreement on the mistaken assumption that Westfield would pay the settlement amount. He argues that enforcing the settlement agreement would be oppressive and unconscionable because he would be personally liable for a $25,000 obligation that he never intended to incur. He insists that his attorney worked diligently to secure the information necessary to enter the agreement; thus, he should not be held responsible for the mistake. Finally, he argues that voiding the agreement would not cause Horney or her attorney substantial hardship.

The district court found that, pursuant to Restatement (Second) of Contracts § 154(b), Woodis bore the risk of the mistake because he entered into the agreement with "only limited knowledge with respect to the facts to which the mistake relates but treat[ed] his limited knowledge as sufficient." Restatement (Second) of Contracts § 154(b). The court found that Woodis, by

-18-

relying on the statement from Ryan "that the settlement terms were acceptable," treated his limited knowledge as sufficient to enter into the agreement with Horney.  The court also concluded that, pursuant to § 154(c), it was reasonable to allocate the risk of the mistake to Woodis.  We find no error here.

7.  <u>The award of attorney's fees must be revisited on remand.</u>

"[F]ee awards are appropriate only for successful claims; unsuccessful claims warrant a fee award only if they are connected to the successful ones."  <u>McMillan</u> v. <u>Mass. Soc. for the Prevention of Cruelty to Animals</u>, 140 F.3d 288, 311 (1st Cir. 1998).  Here, attorney's fees must be reviewed by the district court in light of Horney's withdrawal of her complaint under the Federal Equal Pay Act and our decision to remand Horney's gender discrimination claim for retrial.  The district court should review the award once it has determined the extent to which Horney is a prevailing party.  <u>See</u> <u>Marrero</u> v. <u>Goya of Puerto Rico, Inc.</u>, 304 F.3d 7, 30 (1st Cir. 2002); 42 U.S.C. § 2000e-5(k).

## III.  The Cross-Appeal

1.  <u>The Distsrict Court erred in dismissing Horney's claims for punitive damages.</u>

Horney asserts that the district court erred in dismissing her claims for punitive damages in connection with her hostile work environment claims under Title VII and Mass. Gen. L. ch. 151B and

her gender discrimination under Title VII.  See 42 U.S.C. §
1981a(b); Mass Gen. L. ch. 151B § 9.  All parties agree that the
district court dismissed Horney's punitive damages claim because
she had failed to tender evidence of the net worth of the
defendant.  During the trial, Horney asked the controller of
Westfield what the value of the company's assets were at the time
of trial.  Westfield objected to this question and the objection
was sustained.

Horney argues that it was error for the district court to
dismiss the claim for punitive damages because evidence of the net
worth of the defendant is not a necessary predicate for  a punitive
damages award.  Rather, it is the defendant's burden to show its
net worth if it wishes to reduce a potential punitive damages
award.

Under Federal law, the burden of showing net worth is placed
on the defendant. See Provost v. City of Newburgh, 262 F.3d 146,
163 (2d Cir. 2001) (placing the burden on the defendant to show
evidence of financial condition warranting a limitation in a
punitive damages award); Mason v. Oklahoma Turnpike Authority, 182
F.3d 1212, 1214 (10th Cir. 1999);  Kemezy v. Peters, 79 F.3d 33, 36
(7th Cir. 1996) (rejecting a claim that the plaintiff is required
to show evidence of net worth and placing the burden of producing
such evidence on the defendant); Fishman v. Clancy, 763 F.2d 485,

-20-

490 (1st Cir. 1985) (placing the burden of making a record of the defendant's financial condition on the defendant in order to challenge a punitive damages award). Placing the burden of showing evidence of financial condition on the defendant makes sense because it is the defendant who is in the best position to show his financial status. Additionally, a rule requiring the plaintiff to prove net worth "would . . . encourage plaintiffs to seek punitive damages whether or not justified, in order to be able to put before the jury evidence that the defendant has a deep pocket and therefore should be made to pay a large judgment regardless of any nice calculation of actual culpability." Kemezy, 79 F.3d at 36.

Appellants cite State Farm Mut. Automobile Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003), for the proposition that the plaintiff must prove the defendant's financial condition in a punitive damages case or otherwise the jury will be allowed to award an arbitrary amount that would exceed the amount necessary to achieve a reasonable level of punishment. Nothing in that case stands for the proposition that the burden should not be placed on the defendant to decide whether to submit evidence of its financial condition so that it may limit the punitive damages award.

The district court erred by placing the burden of showing Westfield's financial condition on Horney, and dismissing her punitive damages claims. Accordingly, Horney is entitled to a jury

resolution of her punitive damages claims based on sexual harassment and gender discrimination.

Westfield argues that if the punitive damages claims are remanded to the district court, the issues relating to sexual harassment liability and compensatory damages must be retried because the punitive damages claims are so intertwined with liability and emotional distress damages that Westfield cannot receive a fair trial limited to punitive damages. <u>Hardin</u> v. <u>Catepillar, Inc.</u>, 227 F.3d 268, 272 (5th Cir. 2000) (remanding for a new trial on all issues because the award of punitive damages is intertwined with the jury's view of liability and its award of damages for emotional injury), supports this proposition. As Westfield stresses, the court there observed:

> A jury deciding whether to award punitive damages and their amount responds to the evidence of intentional acts essential here to the underlying finding of liability. But intentional acts span a range of intensity, purpose, and foreseeability, a range that oscillates with the perceived level of emotional injury and its appropriate compensation. Many legal systems reflect this linkage of actual and punitive damages in locating caps for punitive awards. It is no answer that liability and damages here come in distinct legal capsules, because it is equally true that their expression in a verdict is a meld, a phenomenon providing essential anchors and focus to the open-ended character of punitive damages.

<u>Id.</u>

However, the <u>Hardin</u> court was explicit in stating that it reached its decision "without deciding that [the stated

-22-

conclusions] are inseparable as a matter of law across all cases; and we do not suggest that punitive damages may not walk alone in other contexts." Id. at 272-73. Other courts have allowed a retrial on the issue of punitive damages alone. See Jannotta v. Subway Sandwich Shops, Inc., 125 F.3d 503, 516-17 (7th Cir. 1997) (vacating an award of punitive damages because of a faulty jury instruction and remanding for a retrial on that issue only, despite the fact that the jury had also awarded the plaintiff compensatory damages); Defender Industries, Inc. v. Northwestern Mut. Life Ins. Co., 938 F.2d 502, 507 (4th Cir. 1991) (affirming a district court decision to remand for a new trial on punitive damages if his decision to grant a J.N.O.V. was reversed).

We conclude that the district court is in the best position to determine whether the question of punitive damages is so intertwined with the finding of sexual harassment liability and the subsequent award for damages based on emotional harm such that the entire sexual harassment claim must be retried. Accordingly, we will leave this determination to the district court. If the district court decides that the punitive damages issue on the sexual harassment claim should not be retried alone, the district court should so indicate to Horney and afford her an opportunity to leave the jury's verdict of $250,000 intact by not pressing her request for punitive damages on that claim.

IV. Conclusion.

The judgment of the district court is reversed and this matter is remanded to the district court for further proceedings consistent with this opinion. All parties shall bear their own costs.