Connon, J.
INTRODUCTION
Plaintiff Glenroy Burke (“Burke”) was employed by the defendant Chatbar, Inc. (“Chatbar”) from April 2002 until his termination on May 7, 2002. On July 29, 2002, Burke filed a charge of discrimination with the Massachusetts Commission Against Discrimination (“MCAD”) against Chatbar and two former co-employees, Yazmin Chinchilla (“Chinchilla") and George Fassiadis (“Fassiadis”) (collectively, the “defendants”). On July 7, 2003, he filed this complaint alleging battery against Chinchilla (Count I), negligent supervision and retention against all defendants (Count II), employment discrimination in violation of G.L.c. 15 IB against all defendants (Count III), failure to properly investigate against Chatbar and Fassiadis (Count IV), and failure to pay wages in violation of G.L.c. 149, §148 against Chatbar (Count V).
Pursuant to Mass.R.Civ.P. Rule 56, defendants now move for summary judgment as to Count I and Count *666 III.[2] For the reasons discussed below, the motion is ALLOWED in part and DENIED in part.
BACKGROUND
In evaluating a motion for summary judgment, this court must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Bd. of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, in considering defendants’ motion for summary judgment, the facts stated below are presented in the light most favorable to Burke and should not be misunderstood as findings of the court.
Chatbar owns the Chatham Bars Inn (the “Inn”), an oceanfront resort on Cape Cod, Massachusetts, which features 205 luxury guest rooms, conference facilities and fine dining. In addition to the formal Main Dining Room, the Inn also offers dining in its North Beach Tavern and during the summer, the Beach House Grill.
On or about April of 2001, Chatbar employed Burke, a black Jamaican male, as a seasonal server in the Main Dining Room. He worked until November 2001 when his temporary employment ended. During his 2001 employment, Burke had no difficulties with his coworkers or with management at the Inn. He was re-hired to the same position in April of 2002. Also employed at the Inn were Chinchilla, a Hispanic female, who worked as a cook since June of 1999 and Fassiadis, a Caucasian male of Greek ancestry, who worked as a sous chef from September 2000 to October 2003.
The event that led to Burke’s termination, and subsequently to this litigation, occurred on May 6, 2002. At that time, company policy prohibited employees from eating in the kitchen and from consuming food from the kitchen. However, according to Chinchilla, Fassiadis sometimes gave employees permission to get food from the kitchen if they were scheduled to work all day. On that day, Burke arrived to work for an evening shift in the late afternoon. Some time during the evening hours, Chinchilla made Burke a sandwich. However, after a second bite into the sandwich, Chinchilla took the sandwich from Burke and revealed to him the content of the sandwich, a fried dish towel. Feeling embarrassed and upset, Burke returned to the Main Dining Room. Chinchilla repeatedly tried to apologize to Burke. He, however, became upset and angiy at Chinchilla and made several comments to her, including words to the effect that if Chinchilla were in another country, someone would jam the sandwich down her throat. Although Burke could not remember swearing at Chinchilla, he admits that it is possible because he was angry. Burke’s voice was loud and guests were present during the encounter between Chinchilla and Burke in the Main Dining Room. He reported the incident to his supervisor, Linda Travers Reed (“Reed”), and obtained permission to go to the emergency room. Burke was subsequently treated for nausea.
On the following day, Burke was scheduled to work a double shift. He reported to work as scheduled for the morning shift and spoke with Gilbert Baeriswill (“Baeriswill”), the Inn’s Food and Beverage Director. Upon the request of Baeriswill, Burke wrote a statement relating to the incident of the previous evening. Baeriswill also gathered brief statements from some of the employees on duty at the time of the incident. As a result, when Burke returned for his evening shift, he was informed of his termination. Chinchilla was suspended for three days without pay, placed on a written warning, and lost her annual merit raise.
On July 29, 2002, Burke filed a charge of discrimination with the MCAD, which was cross-filed with the Equal Opportunity Commission, against the defendants. On or about March 25, 2003, Burke withdrew his charge from the MCAD to pursue his claims in court. Because this court granted defendants’ motion to dismiss several counts of the complaint, the only issues remaining are the claims of battery against Chinchilla and discrimination against all defendants. Burke alleges that the sandwich incident (as against Chinchilla and Fassiadis) and his termination the next day (as against Chatbar) constitute unlawful discrimination based upon his race, color, and national origin. Burke also claims that Chinchilla’s action of giving him the sandwich constitutes a battery.
DISCUSSION
Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c). See Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); and Allstate Ins. Co. v. Reynolds, 43 Mass.App.Ct. 927, 929 (1997). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). “A complete failure of proof concerning an essential element of the nonmoving party’s case renders all other facts immaterial.” O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000) (citation omitted). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact sufficient to defeat a summary judgment *667 motion. Madsen v. Erwin, 395 Mass. 715, 721 (1985) (citation omitted).
Count III: Employment Discrimination Shifting Burdens of Proof
Burke alleges that his termination amounted to discrimination in violation of G.L.c. 151B, §4 because it was based on his race, color and national origin. Chapter 15 IB, Section 4(1) of the General Law makes it unlawful “[for an employer, by himself or his agent, because of the race [or] color ... of any individual to . . . discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.”
While the actions of each of the defendants on which Burke’s claims are factually based are different, his initial legal burden is the same. Where, as here, there is no direct evidence of discrimination, the court follows a three-stage order of proof. First, Burke has the burden of establishing a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the determinative cause of the challenged employment decision was discriminatory animus. Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 775 (2001). “The prima facie case ‘eliminates the most common nondiscriminatoiy reasons for the plaintiffs rejection,’ thereby creating a presumption of discrimination.” Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995).
Once a prima facie case is established, at stage two, defendants can rebut the presumption of discrimination by offering a legitimate nondiscriminatoiy reason for their conduct. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). To satisfy the burden of production, defendants’ explanation “must consist of not only nondiscriminatoiy reason for [their] action, but also credible evidence indicating that the reasons advanced were the real reasons for the action and not merely a pretext for discriminatory conduct.” School Comm. of Braintree v. Massachusetts Comm’n Against Discrimination, 377 Mass. 424, 430 (1979). If they fail to meet their burden, “the presumption created by the preponderance of the evidence supporting prima facie case entitled [Burke] to judgment.” Blare, 419 Mass. at 442. If however, the burden of production is satisfied by offering a lawful reason for their action, Burke, at stage three, must then show “that the reason given by [the defendants] is merely a pretext for discrimination.” Labonte, 424 Mass. at 821. To show pretext, it is not sufficient for Burke to show that defendants’ proffered rationale is “unsound or even absurd,” or that its action was “arbitraiy or unwise.” Mathews v. Ocean Spray Cranberries, 426 Mass. 122, 128 (1997) (citation omitted). Rather, Burke must present evidence sufficient to support a finding that the proffered reason was not the real reason. The fact finder may infer from such showing that the reason offered is a pretext. See Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 117-18 (2000). “Theplaintiff bears the burden of persuasion on the ultimate issue of discrimination.” Blare, 419 Mass. at 445; Lifchitz v. Raytheon Co., 434 Mass. 493, 506 n.19 (2001) (“the plaintiff must prove by a preponderance of the credible evidence that the defendant’s discriminatoiy animus contributed significantly to that action, that it was a material and important ingredient in causing it to happen” (internal citation omitted)).
Accordingly, to succeed on a motion for summaiy judgment, defendants must show either (1) that Burke is unable to establish a prima facie case; or (2) that Burke is unable to present evidence of discrimination such that his claims would be successful at trial. See Kourouvacilis, 410 Mass. at 714. However, this court is mindful that summary judgment is disfavored in disparate treatment discrimination cases. In these cases, the ultimate issue of intent almost always depends on disputed facts. Blare, 419 Mass. at 439. “Nonetheless, summaiy judgment is not always inappropriate We have upheld summaiy judgment in favor of defendants where their motions demonstrate that the plaintiff is unable to offer admissible evidence of the defendant’s discriminatoiy intent, motive, or state of mind sufficient to carry the plaintiffs burdens and support a judgment in the plaintiffs favor.” Matthews, 426 Mass. at 127 (citations omitted).
Burke’s Discrimination Claims Against Fassiadis and Chinchilla
Burke, as a black male of Jamaican descent, is a member of a protected class under G.L.c. 151B. It is undisputed that Burke was terminated on May 7, 2002. It is equally clear that Chatbar took adverse action against Burke by discharging him from employment. Thus, Fassiadis and Chinchilla’s argument that Burke suffered no adverse employment must fail. However, although the evidence offered here establishes the first two elements of Burke’s claim, as to the third element, the record presented, considered in the light most favorable to Burke, compels the contrary conclusion. Burke has failed to offer any evidence from which a reasonable fact finder could conclude that his race, color and national origin motivated Chinchilla’s action and Fassiadis’s alleged action.
Burke asserts that Fassiadis unlawfully discriminated against him because Fassiadis knew that Chinchilla was going to prepare an inedible sandwich for him and, as the supervisor to Chinchilla, he failed to prevent her from such unprofessional and unacceptable behavior. Likewise, Burke contends that Chinchilla’s conduct was made specifically toward him because he was a black Jamaican. In response, Fassiadis argues that he had no knowledge of Chinchilla’s action until after the incident had occurred. Chinchilla states that she wanted to convey *668 the message that employees should not look to her for food when they know it is against policy.
Other than this event, Burke admits that prior to May 6, 2002, he had no problems with Chinchilla or any other employee at the Inn. He does not allege that derogatory or insulting remarks were ever made by either Chinchilla or Fassiadis (or anyone else) relative to his race, color or national origin. Standing alone, even if undisputed for the purposes of this motion, a single action is usually insufficient to show discriminatory animus. See Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993). Burke presented no evidence to support his claim of discriminatory animus by Fassiadis and Chinchilla. His mere belief that Chinchilla or Fassiadis had discriminatory animus against Black Jamaicans through a single event is not enough to defeat summary judgment. Allder v. Daniel O’Connell’s Sons, 20 F.Sup.2d 210, 214 (D.Mass. 1998) (“even in employment cases, where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate ‘[i]f the nonmoving party rests upon conclusory allegations, improbable inferences and unsupported speculation’ ” (citation omitted)). Therefore, Fassiadis and Chinchilla are entitled to summary judgment on Burke’s claim of employment discrimination.
Furthermore, Burke alleges that his claims ¿gainst Fassiadis and Chinchilla as racial/national origin harassment constitute a hostile work environment. The concept of a “hostile work environment” claim was developed in the context of sexual harassment case law, and is dependent upon a finding that the environment is “pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and poses] a formidable barrier to full participation of an individual in the workplace.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001) (internal citations omitted). An employee may make out a hostile work environment claim if he alleges “offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive.” Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000), citing Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996); see also Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (“]c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive— is beyond [the federal equivalent to G.L.c. 15 IB’s] purview”); Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2001) (to sustain his burden of demonstrating that a hostile work environment interfered with his work performance, plaintiff must establish that the conduct was “sufficiently severe and pervasive to interfere with a reasonable person’s work performance”).
The flaw in a claim based on a single event, as in this case, is that the underlying conduct does not rise to the level of conduct so persuasive as to create a “formidable barrier to full participation ... in the workplace.” College-Town, Div. of Interco, Inc. v. Massachusetts Comm’n Against Discrimination, 400 Mass. 156, 156 (1987); see also Ruffino v. State Street Bank & Trust Co., 908 F.Sup. 1019, 1038 (D.Mass. 1995) (“hostile environment discrimination typically is not confined to one act, directed at one individual, one time; rather, it is a composite of workplace action and inaction”). Fassiadis and Chinchilla argue that Burke’s reliance on the one incident is insufficient to establish a discrimination claim based on hostile work environment. After examining the evidence of record, this court agrees. Though it is theoretically possible to prove hostile environment based on a single act, this is not such a case. There is no evidence in this record that the event on the evening of May 6, 2002 was particularly offensive or extreme that Burke was unable to report for work or that once present, he was unable to participate fully in discharging his duties. While it is undisputed that Burke was treated for nausea at the emergency room, he reported to work as usual the following day. Accordingly, the event alone is insufficient to prove a hostile environment claim based on racial or national origin discrimination.
Burke’s Claim Against Chatbar
On the claim that Chatbar terminated Burke’s employment because of his race, color and national origin, Burke must prove that (1) he is a member of a protected class; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) the Inn sought to fill his position by hiring someone similarly qualified. Abramian, 432 Mass. at 116. Chatbar contends that even if Burke can establish a prima facie case, his claim nevertheless fails because Chatbar has articulated a legitimate nondiscriminatory reasons for Burke’s termination (i.e. his alleged threats and abusive behavior in the Main Dining Room in the presence of guests). Burke, however, denies that he threatened Chinchilla. Because there exists disputed fact as to whether Burke’s conduct in the Main Dining Room was threatening and because it appears that Chatbar supervisors did not afford Burke an opportunity to respond to the allegations, summary judgment is not appropriate.
Count I: Claim of Battery Against Chinchilla
“An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contract, and (b) a harmful contact with the person of the other directly or indirectly results.” Waters v. Blackshear, 412 Mass. 589, 590 (1992), quoting Restatement (Second) of Torts §13 (1965). When the alleged touching is indirect, as here, to be unlawful it must “set [ ] in motion some force or instrumentality with the intent *669 to cause injury.” Commonwealth v. Cohen, 55 Mass.App.Ct. 358, 359 (2002) (citation omitted). “The affront to the victim’s personal integrity is what makes the touching offensive.” Commonwealth v. Burke, 390 Mass. 480, 483 (1983).
Nevertheless, common-law actions are barred by the exclusivity provision of the workers’ compensation act where “the plaintiff is shown to be an employee; his condition is shown to be a ‘personal injury’ within the meaning of the [workers’] compensation act; and the injury is shown to have arisen ’’out of and in the course of. . . employment.’ “ Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980), quotingG.L.c. 152, §26 (1994 ed.); see also Catalano v. First Essex Sav. Bank, 37 Mass.App.Ct. 377, 381-81 (1994). The Supreme Judicial Court further held that the exclusivity provision does not bar claims of intentional tort which is ”in no way within the scope of employment furthering the interests of the employer." O’Connell v. Chasdi, 400 Mass. 686, 690 (1987). “[T]he right to commit such acts with impunity was [not] part of the general compromise of rights involved in the act . . . Such intentional torts are not an accepted risk of doing business.” Burman v. Boch Oldsmobile, Inc., 3 Mass. L. Rep. 441, * 17 (1995). Conduct of an employee is within the scope of employment, “if it is the kind he is employed to perform . . . and if it is motivated, at least in part, by a purpose to serve the employer.” Doe v. Purity Surpreme, 422 Mass. 563, 565 (1996).
Although the parties do not dispute that Burke’s injury occurred in the workplace, they question whether Chinchilla’s action was in the course of employment. Burke takes the position that Chinchilla’s conduct is outside the scope of employment and therefore, his claim of battery against her is not barred by the exclusivity provision. He further alleges that her action, making food for employees, cannot be said to serve the interest of the employer because as a cook, her responsibility is the preparation of food for customers.
“While the motive of the offending party may be relevant in determining the question of scope of employment, an illegal motive will not automatically bring an intentional tort out of the class of those torts barred by the Workmen’s Compensation Act.” Boyle v. Boston Found., Inc., 788 F.Sup. 627, 631 (D.Mass. 1992). That is not the case here. Chinchilla’s conduct of preparing a sandwich, when she was well aware that it was inedible, does not in any way promote the interests of Chatbar. The dispute over whether Fassiadis was aware of her action to allow her to prepare food for Burke further works against her request for summary judgment. Consequently, after a review of all the materials in light most favorable to Burke, this court is convinced that the act allegedly perpetrated by Chinchilla, which constitutes the tort was not done in the course of the employment relationship nor did it further the interests of Chatbar. There is simply no evidence to the contrary.
ORDER
It is therefore ORDERED that defendants’ motion for summary judgment be ALLOWED as to Count III against Fassiadis and Chinchilla, but DENIED as to Count III against Chatbar and Count I against Chinchilla.

On September 10, 2003, Chatbar (and subsequently joined by Fassiadis) filed a Motion to Dismiss Counts II, IV, and Vofthe Complaint under Mass.R.Civ.P. Rule 12(b)(6) and Mass.R.Civ.P. Rule 12(b)(1). Prior to the court’s ruling on the motion, the parties filed a Stipulation of Dismissal of Count V. On January 28, 2004, the court granted defendants’ motion and dismissed Counts II and IV. Therefore, Counts I and III are the only remaining claims that are subject to this motion for summary judgment.