Rufo, Robert C., J.

INTRODUCTION

The defendants move for summary judgment pursuant to Mass.R.Civ.P. 56 following the plaintiffs, Holly Clancy’s (Clancy), action against the defendants for (Count I) discrimination under G.L.c. 151B, (Count II) defamation against former Town of Mashpee Police Chief Maurice A. Cooper (Cooper) and current Town of Mashpee Deputy Chief Albert Todino (Todino), (Count III) wrongful interference with a contractual relationship against Cooper and Todino, and (Count IV) declaratory judgment regarding her rights pursuant to G.L.c. 41, §11 IF and G.L.c. 112, §12CC. For the reasons stated below, the defendants’ Motion for Summary Judgment is ALLOWED IN PART and DENIED IN PART

BACKGROUND

Clancy was hired as a police officer by the Town of Mashpee in 1994. On February 26, 2001, Clancy injured her left shoulder by opening a police cruiser door while on duty. There were no witnesses present at the time of this incident. She initially believed that she injured her rotator cuff. On March 4,2001, Clancy sent a letter to Cooper requesting G.L.c. 41, §111F[2] (11 IF) benefits for an injury sustained while on duty. On March 16, 2001, Cooper sent Clancy a letter acknowledging her request and notified her that sufficient medical information would be required and that the Town of Mashpee was allowed up to six months[3] to act on the application. Cooper then sent a letter to the Town of Mashpee Board of Selectmen (Board), explaining that the circumstances surrounding Clancy’s claim warrants a comprehensive medical record review as the cause and manner of the injury as reported was not consistent with Clancy’s reported on duty activity. He further recommended the services of a third party, Meditrol, in its investigation and the Board approved this suggestion.
During the investigation, Cooper first contacted Dr. Silva, one of Clancy’s doctors, to ascertain whether the injury to her shoulder could have occurred in the manner which Clancy reported. Dr. Silva responded on April 12 by indicating that the injury was probably not to her rotator cuff, but coincided more with tendinitis. Dr. Silva further stated that a rotator cuff injury was not likely a potential injury from opening a car door, but that impingement syndrome in her shoulder was possible from that action. After Cooper reported this diagnosis to Meditrol, Gil Barrett, an associate of Meditrol, replied, on April 27, that according to one of their physicians, who had not seen Clancy, her injury could not have occurred by opening a car door and that her claim should be denied. Barrett also informed Cooper that in the alternative, he could have her examined by a municipally designated physician, Dr. Henry Vaillancourt.
Cooper then forwarded this information to the Board, recommending that Clancy visit Dr. Vaillancourt before they dismiss her claim. On May 21, the Board approved Cooper’s recommendation and requested that Clancy see Dr. Vaillancourt. Cooper then informed Clancy of the Board’s request and also sent a letter to Dr. Vaillancourt’s office explaining the injury and outlined what the town was trying to determine. On June 4, Dr. Vaillancourt saw Clancy and, on the following day, sent a letter to Cooper, concluding that the injury could have occurred while Clancy was on duty and that she was capable to perform light duty work, so long as it did not involve restraining or “taking down” anyone. He also said that the best working conditions would have Clancy working on a desk with her arms supported.
Cooper then notified Meditrol on June 14 of Dr. Vaillancourt’s diagnosis and informed them that he planned to offer Clancy light duty work along with 11 IF benefits if approved. Cooper further contacted Dr. Willsterman, Clancy’s other doctor, to determine if she was capable of light duty work. By June 25, Dr. Vaillancourt and Dr. Willsterman confirmed to Cooper that Clancy was capable of performing light duty work. Cooper then submitted a letter to the Board to approve *723 11 IF benefits for Clancy and sent a letter to Clancy offering her a light duty assignment. Cooper further informed Clancy that 11 IF benefits were contingent on her accepting the light duty assignment pursuant to their collective bargaining agreement. On June 26, the Board granted Clancy 11 IF benefits retroactive to the date of her injury.[4]
Throughout this entire process, Clancy supported herself through the use of sick and vacation days consistent with the Town’s policies. She also requested, and received, compensation benefits from the Sick Leave Bank[5] on three occasions. When the Board approved her 11 IF benefits, Clancy’s sick and vacation time was restored in full.
In July 2001, Clancy was given a light duty assignment, which she conducted for three days. While performing her light duty assignment, she complained of soreness in her injured shoulder. She was later examined by Dr. Willsterman, who determined that the light duty assignment involving a laptop further aggravated her injury. After returning to her assignment with Dr. Willsterman’s assessment, her supervisor, Todino, again required her to use the laptop. Clancy visited Dr. Willsterman again, who advised her not to continue with the light duly assignment. This was her last work assignment.
On July 19, Clancy filed a grievance against Cooper, making several accusations and stating that Todino forced her to use a laptop after she explicitly informed him that she could not. Cooper then sent a letter to Dr. Willsterman, asking for a current diagnosis and prognosis, a current treatment plan, whether Clancy is a candidate for corrective surgery, and inquired as to a reasonable time period for an abatement of her injury. Dr. Willsterman replied that he could not determine why Clancy’s injury had taken so long to heal, but reported that she is making progress.
On January 7, 2002, Clancy filed a grievance with the Massachusetts Commission Against Discrimination (MCAD) claiming discrimination and sexual harassment against Cooper and Todino. In this complaint, Clancy alleged that Todino had made romantic advances towards her earlier in her career.[6] Clancy also averred that Todino caused a delay in receiving her 11 IF benefits and made sexually explicit remarks concerning herself to other officers.
Sometime between July 2001 and January 2002, Clancy determined that she may need surgery to repair her shoulder. She submitted information to Hastings-Tapley (Hastings), the Town’s insurance provider, regarding the surgery. A representative of Hastings contacted the Town, requesting that Clancy undergo another independent medical examination (IME), as Hastings did not believe that her injury was sustained by opening a car door. Clancy was seen by Dr. Donahue and on February 25, 2002, Dr. Donahue produced a report in which he opined that the injury was due to a pre-existing condition, and not the result of an injury sustained while working on February 26, 2001. Because of this report, Hastings then informed the Town that they would pay for a diagnostic arthroscopy of the shoulder and that they would not make a total disability payment at that time. In the event that the arthroscopy revealed that the February 26 incident was the cause of the injury, they would pay for total disability benefits.
The Board appointed Dr. Donahue as a municipally designated physician in August 2002 and requested that Clancy undergo another IME to further determine the extent of her injury, as she has yet to return to work and was still receiving her 11 IF benefits. In an examination conducted in October 2002, in the presence of Clancy’s attorney, Dr. Donahue concluded that she could perform light duty work, but without a diagnostic arthroscopy, it would be difficult to determine the extent of the injury. Clancy was pregnant at the time, and decided to forego the arthroscopy surgery until after she had her child.
Clancy alleges that her rights have been violated throughout this process and she has brought suit against the Town of Mashpee and its Police Department, Cooper, Todino, and the Board both individually and in their capacity as the Board of Selectmen. Clancy brought action against the defendants on December 5, 2002 containing four counts, wherein she claimed (I) discrimination under G.L.c. 151B, (II) defamation by Cooper and Todino, (III) wrongful interference with her contractual rights by Cooper and Todino, and (IV) a declaration of rights under 111F and G.L.c. 112, §12CC.

DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and, where viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

Count I - Discrimination

Clancy’s discrimination count alleges the defendants (i) created a hostile work environment, (ii) retaliated against her due to her rejection of Todino’s alleged romantic advances towards her in 1995, (iii) *724 discriminated against her due to her handicap, and (iv) interfered with her rights pursuant to 111F. In a case pursuant to G.L.c. 151B, the initial burden is on Clancy to produce evidence[7] of unlawful discrimination. Wynn& Wynn, P.C. v. MCAD, 431 Mass. 655, 664 (2000), overruled on other grounds by Stonehill Coll, v. MCAD, 441 Mass. 549, 562 (2004). The burden then shifts to the defendants to “articulate a legitimate, nondiscriminatory” reason for the adverse employment action. Id. at 665-66, quoting Blare v. Husky Iryection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995). If the defendants meet this burden, it falls to Clancy to prove that the defendants’ proffered reason is just a pretext. Wynn & Wynn, 431 Mass. at 666.
In actions alleging unlawful discrimination, proof rarely cam be established by direct evidence. Wheelock Coll. v. MCAD, 371 Mass. 130, 137-38 (1976). Summary judgment is not always an appropriate remedy in such cases. See Blare, 419 Mass. at 439-40. However, where a defendant’s motion for summary judgment demonstrates that the plaintiffs evidence is insufficient to support a judgment in her favor, summary judgment will lie for the defendant. Id. at 440.
Under G.L.c. 151B, §5, Clancy must have filed a timely administrative complaint for sexual harassment with MCAD. Prior to November 2002, a claim was considered timely if filed within six months after the challenged conduct occurred. Thomas v. BDI Specialists, Inc., 437 Mass. 536, 541 (2002). If Clancy can demonstrate “a pattern of sexual harassment that creates a hostile work environment and . . . includes conduct within the six-month statute of limitations, [she] may claim the benefit of the continuing violation doctrine’’ and present other instances of harassment occurring outside the time bar. Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 539 (2001).
Clancy filed her sexual harassment claim with MCAD on January 7, 2002. In order to ensure that the statute of limitations has not run on her claim, she must have alleged at least one incident of discrimination or hostility in the workplace after July 7, 2001. She accomplished this by accusing Todino of forcing her to use the laptop as part of her light duty work during the second week in July 2001 after she told him that according to her doctor, this work was aggravating her injury. Furthermore, she claims that this action is a continuation of Todino’s discriminatory conduct in addition to calling Clancy a “love muffin” as well as making a statement regarding her sexual activity with other officers while she worked as a police officer in West Yarmouth. Moreover, she avers that all of these actions stem from romantic advances Todino allegedly made towards Clancy in 1995. Therefore, because of this causal connection, Clancy is entitled to the benefits of the continuing violation doctrine and the applicable statue of limitations has not run on her claim. Id.

i. Hostile Work Environment

G.L.c. 151B, §1(18) defines hostile work environment to mean “sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.” Ritchie v. Dept. of State Police, 60 Mass.App.Ct. 655, 660 (2004). “The court has defined this environment as one ‘pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization [that] poses a formidable barrier to the full participation of an individual in the workplace.’ ” Id., quoting Cuddyer, 434 Mass. at 532 (2001). According to the MCAD Sexual Harassment in the Workplace Guidelines (2002), Clancy must prove that “a) she was subjected to conduct of a sexual nature; b) the conduct of a sexual nature was unwelcome; c) the conduct of a sexual nature had the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment; and d) the conduct unreasonably interfered with complainant’s work performance or altered the terms and conditions of the complainant’s employment.” Ritchie, 60 Mass.App.Ct. at 660 (fn 7), quoting MCAD Guidelines II.C. Moreover, the unwelcome conduct must be both subjectively and objectively offensive, meaning that evidence of sexual harassment will be considered from “the view of a reasonable person in the plaintiffs position.” Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411-12 (2001).
In this instance, Clancy may have been subject to conduct of a sexual nature when Todino referred to her as “love muffin” and allegedly said that he knew some sergeants in West Yarmouth, where Clancy was a special or part-time officer, and that they said she “was sucking everyone’s d — k over there.” Whether this conduct caused a humiliating or sexually offensive work environment, interfered with her work performance, or altered the terms and conditions of her employment is a question of fact to be determined by a jury.
In Massachusetts, an employer is vicariously liable for sexually harassing conduct of supervisors and those employees on whom the employer confers authority. College-Town Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165 (1987). Therefore an employer is liable for the conduct engaged in by supervisors whether or not it knew about the conduct and whether or not it had any opportunity to stop the conduct or take remedial action. The fact that an employee with supervisory authority does not have direct authority over the plaintiff does not alter this standard. See Morehouse v. Berkshire Gas Co., 989 F.Sup 54, 64 (D.Mass. 1997). In the present matter, it is alleged that as Deputy Chief, Todino made the above statements about Clancy in the presence of Cooper, the Mashpee Chief of Police at the time. Furthermore, it is alleged that Todino, as Clancy’s supervisor while per *725 forming light duty activities, forced Clancy to continue using a laptop against her doctor’s orders. Therefore, due to Todino’s actions, both Cooper as Todino’s supervisor and the Board may be liable for perpetuating a hostile work environment. College-Town Div. of Interco, Inc., 400 Mass. at 165.
For the above reasons, defendants’ summary judgment motion regarding the hostile work environment portion of Count I of Clancy’s complaint is DENIED.

ii. Retaliation

Clancy contends that the defendants interfered with her sick leave benefits, delayed granting her 11 IF benefits, and continued to harass her regarding the 11 IF benefits after they were granted due to her rejection of Todino’s romantic advances in 1995. Clancy has the “burden of establishing a prima facie case of retaliation, and, in the wake of the defendants’ introduction of nonretaliatoiy reasons for the various actions taken, the burden of proving that the articulated nonretaliatoiy reasons were pretext.” Mole v. Univ. of Massachusetts, 442 Mass. 582, 591 (2004). To make out her prima facie case, Clancy had “to show that [s]he engaged in protected conduct, that [s]he suffered some adverse action, and that ‘a causal connection existed between the protected conduct and the adverse action.’ ” Id. at 591-92 quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).
Clancy fails to connect her rejection of Todino’s romantic advances from 1995 to her claims of interference with her sick leave benefits and a delay in receiving her 11 IF benefits. In bringing her claim under this statute, Clancy is obligated to prove a “change in working conditions that materially disadvantaged [her]” and that the change is causally related to actions forbidden under the statute. MacCormack v. Boston Edison Co., 423 Mass. 652,662 (1996). There is no evidence aside from Todino’s vote against granting Clancy extra leave time from the Sick Leave Bank which would indicate that she was retaliated against. Clancy was awarded sick leave benefits each of the three times she requested it.
As for the delay in receiving her 11 IF benefits, Clancy fails to show how her rejection of Todino’s romantic advances in 1995 in any way affected her being granted 11 IF benefits. In an affidavit submitted by the plaintiff, retired Mashpee Officer Ronald P. Bevacqua (Bevacqua) claimed that Todino told him that Clancy could not have injured herself the way she claimed she did and that he and Cooper would fight her 11 IF benefits. Eveiy correspondence between Cooper and the Board, however, contained factual information provided to Cooper by either a medical provider or Meditrol. Cooper did not insinuate in these correspondences that Clancy was either lying or filing a false claim. In his first letter to the Board, Cooper mentioned the circumstances surrounding her benefits request warranted a comprehensive medical record review as the cause and manner of the injuiy as reported was not consistent with Clancy’s reported injuiy. At no other time did Cooper present his own opinions or conclusions to the Board. Furthermore, Cooper deferred from taking Meditrol’s recommendation to deny the claim on April 27 and recommended that the Board further investigate by having Clancy visit Dr. Vaillancourt. Cooper could have recommended a termination of the request at that point, but declined to do so.
The record does not indicate that the Board delayed granting Clancy her 11 IF benefits due to Todino’s alleged advances in 1995. There is nothing in the record to support that Todino had anything to do with granting Clancy 11 IF benefits other than performing some administrative tasks for his supervisor, Cooper.
For the above reasons, defendants’ summaiy judgment motion regarding the retaliation portion of Count I of Clancy’s complaint is ALLOWED.

iiL Failure to Grant a Reasonable Accommodation

To establish a prima facie case of unlawful employment discrimination on the basis of handicap under G.L.c. 151B, §4(16), Clancy must present credible evidence that (1) she is handicapped within the meaning of the statute; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse action was the cause of a handicap. Cargill v. Harvard Univ., 60 Mass.App.Ct. 585, 586 (2004).
In order to prove she is handicapped within the meaning of G.L.c. 151B, §4(16), she must demonstrate (1) whether her condition, actual or perceived, constitutes a mental or physical impairment; (2) that the life activity curtailed constitutes a major life activity; and (3) whether the impairment substantially limited the major life activity. City of New Bedford v. MCAD, 440 Mass. 450, 463 (2003). Based on all of the doctor’s determinations, Clancy has some sort of physical impairment in her shoulder. This physical impairment has made it difficult for Clancy to return to work and, according to G.L.c. 15 IB, § 1 (20), working compromises a major life activity. Id. at 464. Furthermore, “an employee is ‘regarded as’ having a ‘substantial limitation’ on the major life activity of “working’ only if [her] perceived impairment precludes [her] from performing a class of jobs.” IcL at 466. Because Clancy has yet to return to work, her injuiy could be viewed as a disability.
However, Clancy fails to prove that a discrimination against her disability was the basis of any adverse action. Clancy never connects an adverse action to the injuiy she received, other than making a bold assertion to that effect in her complaint. The majority of the record demonstrates that the plaintiff views the alleged delay in her 11 IF benefits and her required trips to the IME was due to her gender and not her injuiy. The record indicates that she was provided a reasonable accommodation and was awarded light duty work which she was unable to perform.[8] Clancy was then *726 sent home and continues to receive 11 IF benefits, demonstrating no other adverse actions.
In regards to her required trips to the IME, section 11 IF provides that a physician designated by the Board may examine a person to determine if said benefits should cease. Therefore, the Board may request an examination by an IME to determine continuation of 11 IF benefits. These requests do not demonstrate an adverse action by the Board due to her disability.
For the above reasons, defendants’ summaiy judgment motion regarding the reasonable accommodation portion of Count I of Clancy’s complaint is ALLOWED.

iv. Interference with her Rights Pursuant to 11 IF

Clancy also alleges that she has been discriminated against pursuant to G.L.c. 15 IB in that the defendants interfered with her 11 IF benefits. As discussed above, with regards to the retaliatory claim and the failure to provide a reasonable accommodation claim, there is little evidence in the record to indicate that the defendants discriminated against Clancy by interfering with her rights pursuant to section 11 IF benefits. This cause of action does not exist inside G.L.c. 15 IB, but is actually an element of the retaliatory and failure to provide a reasonable accommodation claims. Therefore, the issues raised in connection with this claim have been discussed above.
And it is for these reasons, defendants’ summary judgment motion regarding the interference of her rights pursuant to 11 IF portion of Count I of Clancy’s complaint is ALLOWED.

Count II- Defamation

The court favors the use of summary judgment procedures in cases where defamation is alleged. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987); New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 480 (1985). Defendants, however, “must still meet the usual burden under rule 56 of demonstrating by evidence ‘considered with an indulgence in the plaintiffs favor,’ the absence of disputed issues of material fact and their entitlement to judgment as a matter of law.” Godbout v. Cousens, 396 Mass. 254, 258 (1985), quoting Nat'l Ass’n of Gov’t Employees, Inc. v. Cent. Broad Corp., 379 Mass. 220, 231 (1979).
To withstand a summary judgment motion for defamation, aplaintiff must show that: (1) “The defendant made a statement, concerning the plaintiff, to a third party,”[9] (2) “the statement could damage the plaintiff s reputation in the community,”[10] (3) “the defendant was at fault making in making the statement”[11] and (4) “the statement caused the plaintiff economic loss ... or is actionable without proof of economic loss.” Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003). Four types of statements are actionable without proof of economic loss; statements that constitute libel; statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiffs profession or business. Id. “If the statement comes within one of these four exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation.” Id An undamaged plaintiff may recover nominal damages. Id
With regard to the allegation made against Cooper, Clancy fails to put forth any evidence that Cooper ever made a defamatory comment about her. Clancy admits to never hearing Cooper make a defamatory comment and nowhere in the record does any other witness state that Cooper made such a statement. Clancy alleges that Cooper gave false information to the Board to prevent her from receiving 11 IF benefits. Every correspondence between Cooper and the Board, however, contained factual information provided to Cooper by either a medical provider or Meditrol. At no time did he insinuate that Clancy was either lying or filing a false claim. In his first letter to the Board, Cooper mentioned that the circumstances surrounding her leave request warranted a comprehensive medical record review as the cause and manner of the injury as reported is not consistent with Clancy’s reported injury. At no other time did Cooper present his own opinions or conclusions to the Board. Moreover, Cooper deferred from taking Meditrol’s recommendation to deny the claim on April 27 and instead recommended that the Board further investigate by having Clancy visit Dr. Vaillancourt. For the above stated reasons, this court concludes that the summary judgment motion regarding the defamation claim against Cooper contained in Count II is ALLOWED.
The accusation against Todino contains a little more substance. In an affidavit submitted by the plaintiff, retired Mashpee Officer Bevacqua alleged that on several occasions, Todino referred to Clancy as “love muffin” to Bevacqua and other surrounding officers. Furthermore, Bevacqua contends that in one particular instance, Todino said that he knew some sergeants in West Yarmouth, where Clancy was a special or part-time officer, and that they said she “was sucking everyone’s d — k over there.” Todino has admitted to calling Clancy “love muffin” in the past. There remains a question of material fact as to whether these statements could damage Clancy’s reputation in the community and whether Todino was negligent in making such statements. See Jones v. Tabbi, 400 Mass. 786, 792 (1987). There also remains a question of fact as to whether this statement may prejudice Clancy’s profession. For these reasons, the summary judgment motion regarding the defamation claim against Todino contained in Count II is DENIED.

Count III - Wrongful Interference with Contractual Rights

In an action for wrongful interference with a contract, Clancy must prove that she had a contract with a third party, the defendants knowingly induced the third party to break that contract, the defendants’ interference was improper in motive or means, and that Clancy was harmed by the interference. Abramian v. President & *727 Fellows of Howard. Coll., 432 Mass. 107, 122 (2000). The collective bargaining agreement is a contract between Clancy and a third party, the Town. In order to counter the defendants’ claim in its summary judgment motion that there was no evidence that Cooper or Todino wrongfully interfered with Clancy’s contract, she is required to produce countervailing materials demonstrating that Cooper or Todino interfered with her contract with the Town, and, in doing so, Cooper and Todino used improper means or did so as a result of an improper motive. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990).
Despite her accusations that Cooper and Todino gave false information to the Board to prevent her 11 IF benefits, there is less than ample evidence presented to this court to support that claim. Eveiy correspondence between Cooper and the Board contained factual information provided to Cooper by either a medical provider or Meditrol. Cooper never insinuated that Clancy was either lying or filing a false claim. In his first letter to the Board, Cooper mentioned the circumstances surrounding her benefits request warranted a comprehensive medical record review as the cause and manner of the injury as reported was not consistent with Clancy’s reported injury. At no other time did Cooper present his own opinions or conclusions to the Board. Furthermore, Cooper deferred from taking Meditrol’s recommendation to deny the claim on April 27 and recommended that the Board further investigate by having Clancy visit Dr. Vaillancourt. Cooper’s actions in this regard are not indicative of or consistent with a person acting with improper motives.
Furthermore, in all of the evidence presented by the plaintiff, the only material which could support her claim that Todino tried to interfere with Clancy’s 11 IF benefits is an email from Todino that recommended denying Clancy financial support from the Sick Leave Bank. Todino voted to deny her request without any sort of explanation. Though this example may indicate some animosity towards Clancy, Todino’s action has nothing to do -with the Board’s decision to grant Clancy 11 IF benefits. Clancy further points to the affidavit of retired Mashpee Officer Bevacqua claiming that Todino told him that Clancy could not have injured herself the way she claimed she did and that he and Cooper would fight her 11 IF benefits. As discussed above, however, there is no evidence in the record that Cooper tried to prevent Clancy from receiving her 11 IF benefits or that Todino had any power in granting these benefits. While looking at this evidence in the light most favorable to Clancy, without any support in the record, there remains no question of material fact on this claim.
Finally, Clancy does not demonstrate that she suffers harm from this alleged interference. She received the 11 IF benefits from the Board in a timely fashion, receiving said benefits retroactive to the date of her injuxy. She was able to recover all her previously used vacation and sick time. Clancy alleges that the Town has yet to reimburse some of the co-payments she paid out of pocket while the Board was considering her request, but has not demonstrated that the reason she has yet to receive this reimbursement is through some interference by Cooper or Todino in regards to her collective bargaining contractual rights.
Therefore, because Clancy is unable to support her claim of wrongful interference with her contract rights, defendants’ summary judgment motion regarding Count III is ALLOWED.

Count IV - Declaration of Rights

According to G.L.c. 231A, §1, this court “may . . . make binding declarations of right, duty, status and other legal relations ... in any case in which an actual controversy has arisen and is specifically set forth in the pleadings.” The court may, however, “refuse to render or enter a declaratoiy judgment or decree where such judgment or decree would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons.” G.L.c. 231A, §3. In order for a court to entertain a petition for declaratory relief an actual controversy must appear on the pleadings; and, even if there is a finding of an actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution. Galipault v. Wash Rock Invs., LLC, 65 Mass.App.Ct. 73, 83 (2005); Massachusetts Ass’n. of Indep. Ins. Agents & Brokers, Inc. v. Comm’r of Ins., 373 Mass. 290, 292 (1977). “The purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G.L.c. 231 A, which is to enable a court ‘to afford relief from . . . uncertainly and insecurity with respect to rights, duties, status and other legal relations.’ G.L.c. 231A, §9, inserted by St. 1945, c. 582, §1. Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties.” Galipault, 65 Mass.App.Ct. at 84 quoting Comm’r of Ins., 373 Mass. at 292.
In this matter, Clancy is seeking declaratory judgment as to whether (1) she must submit to an examination under 111F, (2) whether she is entitled to the medical report created by that examination and (3) whether her privacy was invaded by releasing her medical records to the Town which requested them. The plaintiff also requests declaratory judgment on (1) whether the Town may order her to be examined by a person who denies that he/she is a healthcare provider under G.L.c. 112, §12CC, (2) whether the Town may prevent the person conducting the medical exam from giving the plaintiff a copy of the report and (3) whether the plaintiff may direct the medical examiner to not disclose results of the medical examination to the Town as an invasion of privacy.
First, this court must address whether declaratory judgment is appropriate for the plaintiffs concerns under 11 IF. This statute does not address how the Board determines whether the employee was harmed *728 while on duty. The statute only addresses that if this determination is made, the employee is entitled to the leave with pay. Section 11 IF further states that the Board will cease such benefits if “a physician designated by the [B]oard . . . determines that such incapacity no longer exists.” There is no mention of exactly how a Board determines whether or not a person may receive 11 IF benefits, but it provides that a physician designated by the Board may examine a person to determine if said benefits must cease. Therefore, the Board may request an examination by an IME to determine continuation of 11 IF benefits. Because the Board requested all three IME examinations, there is no controversy.
Second, it is well established law that third-party employers “may have a substantial and valid interest in aspects of an employee’s health that could affect the employee’s ability effectively to perform job duties.” Bratt v. Int’l Bus. Mach. Corp., 392 Mass. 508, 524 (1984). Moreover, it has been held that “when medical information is necessary reasonably to serve such a substantial and valid interest of the employer, it is not an invasion of privacy ... for a physician to disclose such information to the employer.” Id. In this matter, the Board needed to know the extent of Clancy’s injury in order to determine whether she is entitled to 11 IF benefits. Therefore, there is no violation of Clancy’s privacy when medical providers released medical information to the Board regarding her 111F benefits.
Third, the plaintiff has failed to provide any proof that her medical records have been withheld. There is no evidence in the record which would indicate that the defendants prevented any of her medical examiners from releasing information to Clancy regarding her examinations. As per G.L.c. 112, § 12CC, any healthcare provider who maintains records for a patient treated by such a provider shall permit inspection of such records by such patient. Clancy has not raised a cause of action against a health care provider who withheld her medical records and there is no evidence provided in any of the defendants’ correspondences with health care providers that would indicate that the defendants attempted to prevent Clancy from viewing such records.
Moreover, Clancy has had full access to her medical records and correspondences between the Town appointed doctors and the Board as they are apart of the record she submitted in opposition of the defendants’ summary judgment motion. Therefore, the issues raised in Count IV wherein Clancy seeks declaratory relief are now moot.
For the above reasons, the summary judgment motion regarding Count IV is ALLOWED.

Conclusion

For the above reasons, the defendants’ Motion for Summary Judgment is DENIED as to the portion of Count I regarding the hostile work environment claim and the defamation portion of Count II against Todino, but ALLOWED as to the portions of Count I regarding the retaliation, failure to grant a reasonable accommodation, and interference with Clancy’s rights pursuant to 11 IF claims, the defamation portion of Count II against Cooper, and Counts III and IV of Clancy’s complaint.

 111F provides, in part: “Whenever a police officer ... is incapacitated for duty because of injury sustained in the performance of his duly without fault of his own . . . shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period . . . after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district determines that such incapacity no longer exists.

Under M.G.L.c. 41, §100: Upon application by a . .. police officer . . . the board or officer of such city, town or district. .. shall determine whether it is appropriate under all the circumstances for such city, town or district to indemnify such . . . police officer for his reasonable hospital, medical, surgical, chiropractic, nursing, pharmaceutical, prosthetic and related expenses and reasonable charges for chiropody (podiatry) incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duly without fault of his own ... At any time within two years after the filing of an application as aforesaid, an applicant aggrieved by any denial of his application or by the failure of such board or officer Id act thereon within six months from the filing thereof may petition the superior court in equity to determine whether such board or officer has without good cause failed to act on such an application... (emphasis added).

Clancy had received 11 IF benefits on three previous occasions. In August 1997, then Town of Mashpee Police Chief William Przybylek (Przybylek) recommended 11 IF benefits for Clancy for slamming a door on her finger. Then, in November 1999, Przybylek again recommended benefits for Clancy for a lower abdomen strain. Finally, in May 2000, Clancy received 11 IF benefits via Cooper for a bee süng.

In order to be granted sick bank leave, a board must approve the request. This board is made up of a patrolman, a sergeant and a representative of the Town. At the time of Clancy’s requests, Todino was apparently on this board. Todino voted against granting Clancy leave from the Sick Leave Bank on one occasion.

It is not explicitly said in the MCAD complaint, but Clancy later claims thatTodino’s advances came around 1995. Clancy also stated that Todino stopped when she requested and no longer made any further sexual advances after that incident.

Clancy may meet this burden by producing direct or indirect (circumstantial) evidence. Wynn & Wynn, 431 Mass. at 664.

Because she was unable to perform even a rudimentary requirement of her job, such as data entry, indicates that she may not be able to perform an essential function of her job, but we do not need to address this issue.

The statement may be published in writing, which is designated as libel, or orally, which is designated as slander. Ravnikar, 438 Mass. at 629-30.

“A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.” Restatement (Second) of Torts, §559.

The level of fault required for statements concerning private persons is negligence. Ravnikar, 438 Mass. at 629-30.