Lemire, James R., J.
The plaintiff in this case, Jessica Gledhill (“Gledhill”), alleges that her supervisor, Sonya Plourde (“Plourde”), sexually harassed her during her employment with the Universiiy of Massachusetts Medical School (“Universiiy”). As a result, Gledhill asserts that Plourde, the Universiiy and four other supervisors (collectively, the “Universiiy defendants”) are liable under G.L.c. 15 IB, and that the University also faces liability under 42 U.S.C. §2000e-2 (‘Title VII”) and under general tort principles.[2] The matter is before the court on Plourde’s Motion for Summary Judgment and the University Defendants’ *131 Motion for Summary Judgment. For the following reasons. Plourde’s motion is DENIED and the University defendants’ motion is ALLOWED in part, and DENIED in part.

DISCUSSION

Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as amatter of law.” Mass.R-Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’. . . that there is an absence of evidence to support the nonmoving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
I. Plourde’s Motion for Summary Judgment (Coimts I-II)
Plourde raises three defenses to Gledhill’s G.L.c. 15 IB claim: lack of notice; statute of limitations; and insufficient evidence of a hostile work environment, retaliation, coercion, intimidation, threats, and/or interference with Gledhill’s work performance.

a. Notice

Plourde is not entitled to summary judgment on Counts I or II based on a lack of notice defense. The record reflects evidence that the Massachusetts Commission Against Discrimination (“MCAD”) sent Plourde a copy of Gledhill’s complaint, in care of the University, which named Plourde individually as a Respondent. Although Plourde testified at her deposition that she did not remember receiving this correspondence, Plourde admits that she reviewed and affirmed the University’s position statement, filed in response to Gledhill’s complaint.[3] The position statement discussed the allegations in the complaint, including the specific allegations against Plourde, thereby putting Plourde on notice that her individual conduct was at issue.
Plourde argues that her failure to file her own position statement, participate directly in the conciliation process at the MCAD, or obtain her own counsel demonstrates that she had no knowledge that she was named individually as a respondent in the complaint. However, these facts are not dispositive on the issue of whether proper notice was given. The relevant determinations are whether Plourde was actually named in the complaint, which the evidence suggests she was, and whether she had notice of, and an opportunity to conciliate with respect to, the allegations against her. See Beaupre v. Smith & Assocs., 50 Mass.App.Ct. 480, 492 (2000) (upholding defendant’s personal liability where he was “named as an individual defendant and alleged to have had personal responsibility for the plaintiffs claimed sexual harassment . . . and [where he] had ample notice of the specific allegations made against him personally by the plaintiff)- See also Chicago Ins. v. Lapin, 58 Mass.App. 759, 779 (2003) (noting that “[wjhether notice is sufficient constructively to charge one with specific knowledge is a question ordinarily reserved to the fact finder”). In this case, the record reflects sufficient evidence to permit a fact-finder to conclude that Plourde was on notice of the charges against her, and thus, summary judgment on this basis is inappropriate.

b. Statute of Limitations

Summary judgment is also precluded as to Counts I and II, based on a statute of limitations defense. There are material issues of disputed fact surrounding Plourde’s alleged sexual harassment of Gledhill on or after November 5, 2002.[4] Gledhill’s responses to interrogatories indicate that some of Plourde’s allegedly harassing behavior occurred frequently, while other behavior occurred only once or twice. Although Gledhill could not remember specific dates, she indicated at her deposition that Plourde made comments about her underwear after November 5, 2002. In *132 response to questions about other types of harassing behavior, Gledhill testified that although these alleged incidents happened “all the time,” she could not remember specifically whether they occurred on or after November 5, 2002.
However, in support of her opposition, Gledhill submitted the affidavit of James Weldon, a man she dated between December 2002 and the fall of 2003. Weldon stated that during the time he dated Gledhill, she would complain about Plourde’s conduct at work, which included touching and verbal comments that were sexual in nature. Although Plourde argues that Gledhill’s complaints to Weldon are hearsay, this court does not consider them as substantive evidence. Rather, the court considers them for the purpose of placing Plourde’s alleged conduct within the period of limitations. Indeed, the time at which Gledhill made these complaints is within the personal knowledge of Weldon. The sum of the evidence, taken in the light most favorable to Gledhill, is sufficient to create an issue of material fact regarding the applicability of the statute of limitations.
c. Hostile Work Environment
Next, the court rejects Plourde’s argument that Gledhill failed to present evidence of a hostile work environment. To prevail on a claim based on a hostile work environment, Gledhill must “establish that [Plourde’s] conduct . . . was sufficiently severe and pervasive to interfere with a reasonable person’s work performance.” Muzzy v. Cahillane Motors, 434 Mass. 409, 411 (2001). As discussed above, there is sufficient evidence in the record from which a reasonable juiy could conclude that Plourde sexually harassed Gledhill on or after November 5, 2002. Further, although Gledhill cannot recover for harassment that occurred outside the limitations period, this evidence is admissible “as background evidence of a hostile work environment.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 541 (2001).
The record includes disputed evidence as follows: Plourde made comments of a sexual nature, which were aimed at, and made in the presence of Gledhill, and which intensified over time; Plourde showed Gledhill her underwear on more than one occasion; Plourde rubbed her nipples in front of Gledhill and made tongue gestures; Plourde grinded her hips into Gledhill when Gledhill was restraining patients; Plourde opened the leg of her shorts and exposed her groin area; and finally, Plourde placed a coke bottle towards Gledhill’s buttocks when she was leaning over. In response to this conduct, Gledhill alleges that she felt no choice but to switch to another unit within the hospital to avoid Plourde. The determination whether Plourde’s alleged conduct was sufficiently severe and pervasive as to interfere with a reasonable person’s work performance is one of fact, and therefore, summary judgment as to Count I is denied.

d. Retaliation, Coercion, Intimidation, Threats and/or Interference

Finally, summary judgment is not appropriate with respect to Gledhill’s claim for retaliation, coercion, intimidation, threats and/or interference. Gledhill claims that Plourde retaliated against her for exercising her right to be free from sexual harassment. The summary judgment record reflects evidence that after Gledhill began complaining about and rejecting Plourde’s conduct, Plourde stared at Gledhill in an angry manner, rotated tasks and breaks among the staff in a disproportionate manner, encouraged a patient to file a complaint against Gledhill, and disparaged Gledhill in front of another supervisor. All of these alleged incidents happened after November 5, 2002, and therefore, fall within the limitations period. This evidence, although disputed by Plourde, is sufficient to raise a genuine issue of material fact on the question whether Plourde’s conduct amounted to unlawful retaliation and interference with Gledhill’s work. Thus, summary judgment as to Count II is denied.
II. University Defendants’ Motion for Summary Judgment (Counts III — IV and VII — XV)
Gledhill’s claims against the individual University defendants include aiding and abetting Plourde’s sexual harassment, retaliation and/or constructive discharge. In addition, Gledhill claims that the University is vicariously liable for its employees’ conduct under both Title VII and G.L.c. 15IB, and that it is liable in tort for negligent hiring.

a. Personal Liability

G.L.c. 151B, §4 provides for personal liability, based on the theory of aiding and abetting discrimination. Beaupre, 50 Mass.App. at 492. “[I]n order to prevail on a claim of personal liability ... a complainant must demonstrate that a wholly individual and distinct wrong was committed by the . . . individual respondent(s) . . . Further, the complainant must provide credible evidence that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender, and that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L.c. 151B . . . There must exist direct evidence to permit a reasonable fact finder to conclude that the aider/abettor possessed the requisite intent and knowledge of the unlawful enterprise to render himself or herself liable under an accessory liability theory." Harmon v. Malden Hospital, 19 M.D.L.R. 157, 158 (1997).
Gledhill’s claims against Richmond and McGrath are based on retaliation. She argues that they made the decision to transfer her from Unit 1 to Unit 2 in retaliation for her complaint to the Equal Opportunity Office (“EOO”). In response, Richmond and McGrath assert that they transferred Gledhill with the intent to prevent any further harassment, in a manner that would be least burdensome on the hospital’s patients. *133 Gledhill admits that the transfer did not involve any reduction in her pay or status within the hospital, or any change in her job duties. Although the record reflects that Gledhill would have preferred to remain in Unit 1, the transfer was not a sufficiently adverse employment action, as a matter of law, to permit an inference of retaliation on the part of Richmond or McGrath. See MacConnack v. Boston Edison Co., 423 Mass. 652, 663-64 (1996) (holding that complainant failed to present a prima facie case of retaliation where his claims of retaliation amounted to “no more than subjective feelings of disappointment and disillusionment,” with “no objective evidence that he had been disadvantaged in respect to salary, grade, or other objective terms and conditions of employment”). Because Gledhill has failed to put forth a prima facie case of retaliation by McGrath, she is entitled to summary judgment in her favor, as to Counts III and IV. Similarly, because Gledhill has failed to put forth forth a prima facie case of retaliation by Richmond, he is entitled to summary judgment in his favor, as to Counts IX and X.
Next, Gledhill asserts that, even though she had not personally complained about Plourde,[5] respondents Champlin and Benedetti were aware that Plourde had made sexually inappropriate comments and/or gestures in the past. Gledhill argues that Champlin and Benedetti did not adequately address such conduct, and that this failure, or acquiescence, amounts to aiding and abetting Plourde’s discrimination against Gledhill.
In Hope v. San-Ran, Inc., 8 M.D.L.R. 1195, *17 (1986), the commission held a restaurant’s general manager individually liable for his knowing acquiescing in another employee’s discrimination. The complainant informed the general manager on numerous occasions that her direct supervisor was sexually harassing her, but he failed to undertake any action on her behalf. Id. at *5-7. Eventually, the complainant’s supervisor fired her, and upon her further complaint to the general manager, he promised to look into the situation and get back to her shortly. Id. at *8. He never did so. Id. The Commission held that the general manager’s “acquiesc[ence] in the termination of [the Complainant] when she refused to put up with and complained about sexual harassment” was a “separate, illegal act[ ] of aiding and abetting discrimination,” which was sufficient to hold him personally liable. Id., at *17.
In this case, the record reflects that even though Champlin was not Plourde’s supervisor, he reported the fact that she was making inappropriate sexual innuendoes, which were aimed at no one in particular, and about which no one had actually complained, to the nurse manager in charge of Plourde. This undisputed evidence precludes personal liability on the part of Champlin. Even assuming Plourde’s sexual innu-endoes amounted to sexual harassment, by notifying Plourde’s actual superior, Champlin did not simply acquiesce in or impliedly condone Plourde’s conduct. See Chapin v. Univ. of Mass. at Lowell, 977 F.Sup. 72, 80 (1997) (finding that Massachusetts appellate courts would require a plaintiff to prove that a supervisor knew of sexual harassment, failed to act on it, and that the failure caused injuiy to the plaintiff). Therefore, summary judgment should be allowed in favor of Champlin on Counts VII and VIII.
On the other hand, the record reflects evidence that Benedetti was aware of Plourde’s alleged sexual harassment of another employee, Allison Kyne. Upon receiving an informal complaint from Kyne that Plourde had “lifted her shirt” in front of Kyne, Benedetti informed her that she could file a complaint with the EOO. Kyne declined that offer. Benedetti and Kyne both testified that Kyne said that she did not want to formally report the incident because she was “just venting,” and that she would deny their conversation if he pursued an investigation. They also testified that Benedetti checked in on Kyne twice after their initial conversation to see if she changed her mind about speaking to someone at the EOO, and again, Kyne refused his assistance. Apart from the above-described discussions, Benedetti took no other action with respect to Kyne’s complaint.
In interpreting G.L.c. 151B, the Chapin court held that “non-action by a supervisory employee, with knowledge that sexual harassment or other prohibited discrimination is occurring in the workplace, is actionable by a victim of the wrongdoing as aiding and abetting.” Id. Although Benedetti could not compel Kyne to file a formal complaint against Plourde or participate in an investigation, her informal complaint put Benedetti on notice that there could be sexual harassment going on in the workplace. As a high-ranking supervisor, he had some duty to act to curb that conduct. See Beaupre, 50 Mass.App.Ct. at 495 n.24 (noting that “nonharassing supervisory corporate employees” “have uniformly been . . . individually liable under the aiding and abetting provision for failing to report or remedy, or for acquiescing in, sexual harassment by other employees”). Because there is a genuine issue of material fact on the question whether Benedetti made any meaningful response to the knowledge that sexual harassment was likely occurring in the workplace, summary judgment in favor of Benedetti on Counts IX and X is denied.

b. Employer Liability

Under G.L.c. 151B, the University is strictly liable for sexual harassment committed by its supervisory employees. See College Town Division of Interco, Inc. v. MCAD, 400 Mass. 156, 167 (1987) (holding employer liable for supervisor’s discriminatory conduct). The University attempts to distinguish College Town because the facts of that case suggested that the employer’s response to its employee’s complaints of sexual harassment was inadequate. Id. at 167-68.[6] *134 However, in addition to upholding liability on the basis of the employer’s inaction, the Court upheld the MCAD’s independent finding of vicarious liability stemming directly from the supervisor’s harassment. Id. at 167. Therefore, to the extent that Gledhill prevails on her claims against Plourde, and regardless of the reasonableness of the University’s response to Gledhill’s complaints, the University will be vicariously liable.
Under Title VII, the strict liability rule is somewhat tempered. In 2003, the First Circuit elaborated on the following Supreme Court language from companion cases Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998), and Burlington Industries. Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998):
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action, is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
Reed v. MBNA, 333 F.3d 27, 32 (1st Cir. 2003). Gledhill argues that the determination of whether the University has proven this affirmative defense is a question of fact.[7] This court agrees.
Upon receipt of Gledhill’s complaint, the University took prompt action to separate Gledhill and Plourde. Although Gledhill was upset by the fact that she, and not Plourde, had to be transferred, the University appears to have had some basis for doing so. Namely, it argues that Plourde was essential to the Unit, and her transfer, as opposed to Gledhill’s, would have caused a greater disruption to the patients. In any event, even if the transfer is deemed reasonable as a matter of law, a jury may conclude that the transfer alone was not enough to satisfy the affirmative defense set forth by the Supreme Court. The record reflects that Gledhill was forbidden from returning to her old Unit, while Plourde regularly came onto Gledhill’s new Unit and stared at her. In addition, there is evidence that Benedetti, a lead supervisor, had been notified of Plourde’s conduct in the past, yet failed to take any preventive or corrective action based on that knowledge. Finally, there is evidence that Gledhill accepted the transfer, thereby taking advantage of the corrective opportunities provided by the University. This evidence, taken in the light most favorable to Gledhill, could negate the University’s affirmative defense to Title VII liability.
Finally, the University asks the court to dismiss Gledhill’s negligent hiring claim set out in Count XV, because Gledhill failed to comply with the procedures set forth in the Massachusetts Tort Claims Act. The University is a “public employer.” McNamara v. Honeyman, 406 Mass. 43, 47 (1989). As such, Gledhill was required to comply with the presentment requirements of G.L.c. 258, §4. Gledhill has included nothing in the record to demonstrate her compliance with these requirements. Indeed, she has included no opposition to the University’s argument on this point. As such, the University is entitled to summary judgment on Gledhill’s tort claim in Count XV.
In sum, the Universily is not entitled to summary judgment on Counts XI and XII. However, because there is no liability against Tucker, Champlin or Mc-Grath, the University cannot be vicariously liable for their conduct. As such, Counts XIII and XIV against the University must be dismissed. Lastly, the University is entitled to summary judgment on Count XV.

ORDER

For the preceding reasons, Plourde’s Motion for Summary Judgment as to Counts I and II is DENIED. The University Defendants’ Motion for Summary Judgment is ALLOWED in part, and DENIED in part as follows:
Summary Judgment is ALLOWED as to Counts III, IV, VII, VIII, IX, X, XIII, XIV and XV.
Summary Judgment is DENIED as to Counts IX, X, XI and XII.

A11 other claims have been dismissed.

Even assuming Plourde did not receive a copy of the complaint directly, the court, in Muldowney v. Americare Health Services, Inc., reasoned “it is the Commission’s responsibility to provide notice to respondents . . . [Ijt... is not the plaintiffs responsibility to ensure that the defendant be served.” 19 Mass.L.Rptr. 658, *1 (Mass.Super. 2005).

In its Memorandum of Decision and Order on Defendant Sonya Plourde’s Motion to Dismiss, this court (Kem, J.) ruled as a matter of law that the continuing violation doctrine does not apply to Gledhill’s claims, and thus, that Gledhill is precluded from recovering for harassing conduct that occurred before the limitations period began on November 5, 2002.

GledhiII admits that she never reported Plourde’s sexual harassment to any of the individual respondents prior to filing a formal complaint with the EOO. She does argue, however, that she made other, non-sexual complaints to Champlin regarding Plourde’s conduct. Champlin proposed mediation for Plourde and Gledhill to reconcile their differences, but Gledhill refused, fearing retaliation by Plourde.

Alternatively, the University argues that Plourde was not Gledhill’s direct supervisor, and thus, that the holding of College Town is inapplicable. This argument fails because the record before the court reflects evidence that Plourde exercised some supervisory authority over Gledhill. The extent of Plourde’s supervisory capacity is a question for the fact-finder. Moreover, courts have found that “[t]he fact that an employee with supervisory authority does not have direct authority over the plaintiff does not alter [the College Town] *135 standard. Clancy v. Town of Mashpee, Civil No. 02-0751 (Barnstable Super.Ct. Jan. 29, 2007) (Rufo, J.) [21 Mass. L. Rptr. 722], citing Morehouse v. Berkshire Gas Co., 989 F.Sup. 54, 64 (D.Mass. 1997).

Gledhill does not argue that a tangible employment action was taken against her, negating the University’s affirmative defense.